**In re Thomas R. BEATY and Nancy Z. Beaty, Debtors.**

**David Selinger, Appellant,**

v.

**Thomas R. Beaty, Appellee.**

**BAP No. SC–00–1566–RyKR.**

**Bankruptcy No. 91–10342–A7.**

**Adversary No. 98–90205–A7.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Submitted: March 22, 2001.

Filed: July 23, 2001.

David Selinger, Oceanside, CA, pro se.

Thomas B. Gorrill, San Diego, CA, for Thomas R. Beaty and Nancy Z. Beaty.

Before RYAN, KLEIN, and RUSSELL, Bankruptcy Judges.

## OPINION

RYAN, Bankruptcy Judge.

After Thomas and Nancy Beaty ("Debt-

ors") received a chapter 7[1] discharge, David Selinger obtained a state court default judgment against Thomas (the "Default Judgment"). Selinger then filed an adversary proceeding seeking to revoke Debtors' discharge under § 727 (the " § 727 Action"). After a hearing, Debtors were granted summary judgment. Later, Selinger filed a second complaint (the "Complaint") against Thomas, alleging that the Default Judgment was nondischargeable under §§ 523(a)(2), (4), and (6). Both Selinger and Thomas filed cross-motions for summary judgment (collectively, the "Motions"). Selinger also filed a motion to strike portions of Thomas' answer. After a hearing, the bankruptcy court (1) denied the motion to strike; (2) denied Selinger's motion for summary judgment; and (3) granted Thomas' motion for summary judgment (the "Order"). Selinger then filed a motion to alter or amend, which the bankruptcy court denied. Selinger timely appealed.

We AFFIRM IN PART and REVERSE IN PART and REMAND.

## I. FACTS

In January 1991, Selinger filed a complaint in California state court against Saraston Development Company and DOES 1–50. The complaint alleged four causes of action: (1) breach of duty to exercise reasonable care, (2) negligence, (3) assumption of premises liability, and (4) fraudulent concealment with malice. At the time, Selinger did not know Thomas' identity.

On September 12, 1991, Debtors filed a chapter 7 petition. Debtors did not list Selinger on their bankruptcy schedules as a creditor because Debtors did not know of Selinger's identity. On January 10, 1992, Debtors received their discharge.

In June 1993, the state court entered the Default Judgment finding that Thomas had been properly served with the summons, complaint, and order substituting him as a named defendant and that Thomas had failed to timely appear and answer. The Default Judgment stated that Thomas had injured Selinger by willfully suppressing a material fact and that his "conduct was fraudulent, willful, malicious, and in conscious disregard" of Selinger's rights. Default Judgment Against Thomas R. Beaty (June 10, 1993), at 1. Additionally, the Default Judgment awarded Selinger damages of $5,000 and provided that punitive damages would be determined later.

The state court also ordered Thomas to appear at a judgment debtor's exam and to produce certain documents. In response, Thomas filed a notice of injunction informing the state court of Debtors' bankruptcy and discharge. Nothing further happened in the state court.

On August 29, 1994, Selinger filed the § 727 Action. After a hearing, the bankruptcy court entered summary judgment in favor of Debtors, and Selinger filed a motion for reconsideration, which was denied. Selinger appealed to the district court, and the district court affirmed the bankruptcy court by an order entered on April 14, 1997.

Shortly thereafter, Selinger filed the Complaint.[2] Thomas then filed a motion to dismiss, and on September 1, 1998, the bankruptcy court dismissed the Complaint.

---

**1.** Unless otherwise indicated, all chapter, section, and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330 and to the Federal Rules of Bankruptcy Procedure, Rules 1001–9036.

**2.** Under the Ninth Circuit Judicial Workload Equalization Program, this matter was assigned to the Hon. John Peterson, Bankruptcy Judge for the District of Montana.

Selinger appealed the dismissal to the BAP (the "Appeal").

Later, Thomas answered the Complaint, generally denying the allegations in the Complaint and affirmatively alleging laches. In his answer, Thomas stated that

Plaintiff had formal notice of the Defendant's [Thomas] Chapter 7 bankruptcy and discharge no later than June of 1993. Plaintiff filed a complaint objecting to the Debtors' discharge. Judgment was entered in Defendant's [Thomas] favor, Plaintiff appealed, and the judgment was affirmed. Only after learning of a published court opinion which might give the Plaintiff a basis to claim non-dischargeability for punitive damages, Plaintiff brought this action to determine the dischargeability of his claim. Plaintiff has brought this action without excuse or justification to explain the unreasonable delay of almost six years since he first learned of the bankruptcy. This delay has prejudiced the Defendant, and the Plaintiff's complaint should be dismissed.

Defendant's Answer to Plaintiff's Complaint to Determine Dischargeability of Debt (Feb. 24, 2000), at 4–5.

On March 9, 2000, we reversed the bankruptcy court's decision to dismiss the Complaint and remanded the matter to the bankruptcy court.[3] On April 20, 2000, a hearing was held on the motion to strike and the Motions, and on July 12, 2000, the Order was entered. Later, the bankruptcy court denied Selinger's motion to alter or amend and Selinger thereafter timely appealed both orders.

**3.** Upon remand, the case was reassigned from Judge Peterson to Judge Adler.

**4.** On appeal, Selinger fails to assign any error to the bankruptcy court's denial of the motion

## II. ISSUES[4]

A. Whether the bankruptcy court violated Selinger's right to due process.

B. Whether the bankruptcy court erred in granting Thomas' motion for summary judgment.

C. Whether the bankruptcy court erred in denying Selinger's motion for summary judgment.

## III. STANDARD OF REVIEW

 We review whether the bankruptcy court violated an individual's right to due process *de novo*. *See Duff v. United States Trustee (In re California Fidelity, Inc.)*, 198 B.R. 567, 571 (9th Cir. BAP 1996). We also review the bankruptcy court's granting of summary judgment *de novo*. *See Gertsch v. Johnson & Johnson Fin. Corp. (In re Gertsch)*, 237 B.R. 160, 165 (9th Cir. BAP 1999). Similarly, we review the bankruptcy court's interpretation of the Code and Rules *de novo*. *See Olson–Ioane v. Derham–Burk (In re Olson)*, 253 B.R. 73, 74 (9th Cir. BAP 2000).

## IV. DISCUSSION

A. *The Bankruptcy Court Did Not Violate Selinger's Right to Due Process.*

 The bankruptcy court denied the motion to strike Thomas' laches defense. On appeal, Selinger contends that because the laches defense was inadequately pled, the bankruptcy court's denial of his motion to strike was a denial of his due process rights. Similarly, Selinger contends that the bankruptcy court's use of the laches doctrine violated his due process rights. We disagree.

to alter or amend. Accordingly, we do not address this issue. *See Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir.1988) (issue not raised in brief has been abandoned).

The Fourteenth Amendment of the United States Constitution provides in pertinent part that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1.

In *Wade v. State Bar of Arizona (In re Wade)*, 948 F.2d 1122 (9th Cir.1991), the State Bar of Arizona brought a motion for relief from the automatic stay to pursue disciplinary action against the debtor. *Id.* at 1123. The bankruptcy court granted the motion before the debtor's response was due under the court's local rules, and the debtor claimed that this violated his due process rights. The Ninth Circuit disagreed, stating that if the debtor

> had been deprived of any meaningful opportunity to respond to the Bar's position before the Bankruptcy Court, there could have been a denial of due process.... However, the Wades were not deprived of such an opportunity.... The Bankruptcy Court thoroughly considered the Wades' arguments and evidence when they were raised in the Wades' motion for reconsideration of its order.

*Id.* at 1125.

Here, Selinger claims that the bankruptcy court's ruling departed from the accepted and usual course of judicial proceedings. However, the Record shows that Selinger was provided ample opportunity to express his views. Selinger filed multiple documents [5] in connection with the matter. Selinger was also provided his day in court, and the bankruptcy court heard his arguments.

Selinger argues that the answer did not adequately establish the basis for a laches defense. We disagree. The answer provided ample reasons for the laches defense, and Selinger was adequately placed on notice for pleading purposes.

Accordingly, we see no basis for Selinger's assertion that the bankruptcy court violated his due process rights.

**B.** *The Bankruptcy Court Erred in Granting Thomas' Motion for Summary Judgment.*

▬ The bankruptcy court held that laches was a valid defense and operated as a time bar to the Complaint. On appeal, Selinger contends that the bankruptcy court erred in allowing laches to serve as an affirmative defense. We agree.

Section 523(c)(1) provides that

> [e]xcept as provided in subsection (a)(3)(B) of this section, the debtor shall be discharged from a debt of a kind specified in paragraph (2), (4), (6), or (15) of subsection (a) of this section, unless, on request of the creditor to whom such debt is owed, and after notice and a hearing, the court determines such debt to be excepted from discharge under paragraph (2), (4), (6), or (15), as the case may be, of subsection (a) of this section.

11 U.S.C. § 523(c)(1). Subsection (a)(3)(B) provides that

---

**5.** Selinger filed (1) Plaintiff's Memorandum of Points and Authorities in Support of Motion to Strike (Mar. 30, 2000); (2) Plaintiff's Reply to Defendant's Opposition to Plaintiff's Motion to Strike (Apr. 7, 2000); (3) Plaintiff's Memorandum of Points and Authorities in Support of Motion for Summary Judgment (Mar. 23, 2000); (4) Plaintiff's Reply to Defendant's Opposition to Plaintiff's Motion for Summary Judgment (Apr. 12, 2000); (5) Plaintiff's Memorandum of Points and Authorities in Opposition to Defendant's Motion for Summary Judgment (Apr. 7, 2000); (6) Plaintiff's Memorandum of Points and Authorities in Support of Motion to Alter the Judgment (July 24, 2000); and (7) Plaintiff's Reply to Defendant's Opposition to Plaintiff's Motion to Alter the Judgment (Aug. 15, 2000).

A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

. . . .

neither listed nor scheduled under section 521(1) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit—

. . . .

if such debt is of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim and timely request for a determination of dischargeability of such debt under one of such paragraphs, unless such creditor had notice or actual knowledge of the case in time for such timely filing and request; . . . .

11 U.S.C. § 523(a)(3)(B).

Rule 4007(c) provides a sixty-day time limit from the first date set for the § 341(a) creditors' meeting for the filing of a nondischargeability complaint under §§ 523(a)(2), (4), or (6). However under Rule 4007(b), a § 523(a)(3)(B) complaint can be filed "*at any time*." FED. R.BANKR.P. 4007(b) (emphasis added). Because Selinger's debt was not scheduled, § 523(a)(3)(B) applied to the Complaint, which could be filed at any time. *See Irons v. Santiago (In re Santiago)*, 175 B.R. 48, 51 (9th Cir. BAP 1994).

In *Santiago*, the debtor failed to list the creditor, and the creditor did not receive notice of the debtor's bankruptcy until three months after the date that had been set for filing dischargeability actions. *See Santiago*, 175 B.R. at 48–49. Approximately eighteen months after receiving notice of the debtor's bankruptcy, the creditor filed a dischargeability action. *Id.* We held that the creditor's complaint was timely filed because Rule 4007(b) allowed for a suit to be filed at any time. *Id.* at 51. However, we noted that "[t]he Panel does

not render any opinion on whether laches or estoppel may impose a time limit on cases filed under section 523(a)(3)(B) or Rule 4007(b)." *Id.* at 51 n. 4.

We now address this issue and hold that laches does not apply to either § 523(a)(3) or Rule 4007(b). While we have not directly addressed this issue before, the Ninth Circuit has hinted at the proper outcome. In *Beezley v. California Land Title Co. (In re Beezley)*, 994 F.2d 1433 (9th Cir.1993), the debtor was denied the right to reopen his case and schedule an omitted debt because the no asset case had no bar date to filing claims. *Id.* at 1434. Therefore, the scheduling of the debt had no effect on its dischargeability. *Id.* In a lengthy concurring opinion, Judge O'Scannlain explained that § 523(a)(3) protects creditors without knowledge of the bankruptcy who hold claims that are nondischargeable under §§ 523(a)(2), (4) or (6) from having their debts discharged. *Id.* at 1435–36. He noted that "Congress has expressly disapproved the importation of equitable notions ... into the interpretation and analysis of section 523(a)(3)." *Id.* at 1439 n. 4. He explained that

> [i]t cannot be overemphasized that we deal here with matters that are absolutely fundamental to the integrity of the Bankruptcy Code: the balance struck between the rights of creditors on the one hand, and the policy of affording the debtor a fresh start on the other.... What Congress deemed a proper balancing of the equities as between debtor and creditor with respect to unlisted debts it has enacted in section 523(a)(3) of the Bankruptcy Code. It is not for the courts to restrike that balance according to their own lights.

*Id.* at 1439–40.

We also have hinted at what the proper outcome should be. In *Santiago*, we cited

approvingly *Krakowiak v. Lyman (In re Lyman)*, 166 B.R. 333 (Bankr.S.D.Ill.1994), which is the only court that has dealt squarely with this issue. In *Lyman*, numerous creditors were not given notice of the debtor's bankruptcy until seven months after the bar date for filing a dischargeability complaint. *Id.* at 334. One year after receiving notice, the creditors filed a complaint alleging that the debts owed them were nondischargeable under §§ 523(a)(2) and (4), and the debtor moved to dismiss based upon laches and estoppel. *Id.* at 334–35. The court stated that the

> debtor ha[d] not cited any rule that imposes a time limit for bringing a complaint to determine the dischargeability of a debt under section 523(a)(3); the bankruptcy rules simply do not provide one. Instead Rule 4007(b) expressly provides that a complaint other than under § 523(c) may be filed at any time.... Therefore, debtor's argument that the complaint should be dismissed pursuant to laches or estoppel is without merit.

*Id.* at 337 (internal quotation marks and citations omitted).

In *Wilborn v. Gallagher (In re Wilborn)*, 205 B.R. 202 (9th Cir. BAP 1996), we again cited *Lyman* with approval. We noted that *Lyman* stood for the proposition that the language of Rule 4007(b) allows for "lengthy extensions where creditors did not receive notice until after the bar date." *Id.* at 209. We also noted that *Lyman* addressed the possibility of equitable defenses to the "any time" language of Rule 4007(b) and deemed these defenses inapplicable. *Id.* at n. 7.

*Collier on Bankruptcy* is also instructive on this point and affirms that the Rules do not contemplate a time limit for bringing these types of actions.

Dischargeability or nondischargeability proceedings regarding most types of debt may be initiated, either by the debtor or a creditor, at any time. They are not subject to the time limitations for filing complaints that apply to nondischargeability proceedings seeking determinations under paragraphs (2), (4), (6), and (15) of section 523(a) of the Code, which are governed by subdivisions (c) and (d) of Bankruptcy Rule 4007....

The rule expressly contemplates that such dischargeability proceedings may be brought after the bankruptcy case is closed by providing that a case may be reopened, if necessary, to file a dischargeability complaint. The broad permissive language of the rule does not appear to give the bankruptcy court discretion to deny a reopening of the case for this purpose.

9 L. KING, COLLIER ON BANKRUPTCY, ¶ 4007.03 (15th ed.2000).

Here, the bankruptcy court stated that the Plaintiff [was] guilty of laches by failing to bring a Section 523 nondischargeability complaint for over five years after first learning the Defendant had filed bankruptcy.... Laches is an equitable doctrine, to be applied at the discretion of the Court so as to protect a party against whom a claim has been asserted from any prejudice which may result from the unreasonable delay of the party asserting the claim. Here, Mr. Selinger's delay is inexcusable and was done for tactical reasons. The Plaintiff expressed an intent to await a change in the law with regard to dischargeability of punitive damages and to see what would happen with this [sic] 727 action in which he objected to Mr. Beaty's discharge. Prejudice to the Defendant is obvious based upon these facts, and the Court rules that the Debt-

or is entitled to a fresh start at this late date, having received his discharge in 1992.

Findings of Fact and Conclusions of Law re: Cross-motions for Summary Judgment and Motion to Strike (July 12, 2000), at 4. While we may agree that Selinger's failure to act more promptly is questionable, we are not at liberty to rewrite the plain language of the Code or the Rules. *See Graves v. Myrvang (In re Myrvang)*, 232 F.3d 1116, 1123–24 (9th Cir.2000) (a bankruptcy court is a court of equity and it should use principles and doctrines of equity except where their application would conflict with the Code). Rule 4007(b) states that an action may be brought at *"any time." See* FED.R.BANKR.P. 4007(b) (emphasis added). A laches defense to the filing of a § 523(a)(3)(B) complaint is in conflict with Rule 4007(b) and therefore is inappropriate.

The Rules also provide a debtor with a way to escape the apparent § 523(a) dilemma of having to face a nondischargeability action years after a discharge has been granted. Rule 4007(a) allows a debtor to bring an action to determine the dischargeability of a debt. *See* FED. R.BANKR.P. 4007(a). Here, Thomas could have brought an action to determine the dischargeability of the Default Judgment and averted the years of delay that arguably prejudiced him. Because Thomas did not utilize this option, he cannot now complain that he has been unjustly treated.

Accordingly, the bankruptcy court erred in granting summary judgment in favor of Thomas.

C. *The Bankruptcy Court Erred in Denying Selinger's Motion for Summary Judgment.*

The bankruptcy court denied Selinger's motion for summary judgment because it had granted Thomas summary judgment.

On appeal Selinger contends that the bankruptcy court erred by not giving preclusive effect to the Default Judgment.

Because the bankruptcy court did not reach the issue of whether the state judgment was subject to collateral estoppel, we cannot say whether the bankruptcy court erred by not giving preclusive effect to the Default Judgment. Accordingly, we remand to the bankruptcy court to determine whether the Default Judgment satisfies the elements of collateral estoppel.

## V. CONCLUSION

In sum, the bankruptcy court did not violate Selinger's right to due process. The bankruptcy court erred in granting Thomas' motion for summary judgment. The bankruptcy court erred in denying Selinger's motion for summary judgment. We remand to the bankruptcy court the issue of whether the Default Judgment satisfies the elements of collateral estoppel, and for any additional proceedings that it deems necessary to resolve this matter.

AFFIRMED, in part, REVERSED, in part, AND REMANDED.

KLEIN, Bankruptcy Judge, concurring.

I concur in the result and write separately to expose the majority's assertion that laches *never* applies to § 523(a)(3)(B) dischargeability actions as neither necessary to the decision of this appeal nor prudent appellate decision-making. The assertion is mere dictum that should be regarded as having doubtful precedential value.

Our reversal of the dismissal on summary judgment of Selinger's § 523(a)(3)(B) action based on laches should assume without deciding that laches is available as a defense and conclude the bankruptcy court erred in applying laches in this instance.

What is essential to our decision in this appeal is that the dismissal based on laches was error; what is not essential is that laches never applies.

This is no trivial matter. The important question of how unscheduled creditors legitimately can go about pursuing arguably nondischargeable debts in the face of a bankruptcy discharge is poorly explored and, especially where the question of dischargeability is not yet resolved, fraught with opportunity for abuse that promotes dysfunction between state and federal courts. The dearth of decisional law on this complex subject warrants that we proceed with caution in the interest of providing competent precedent and guidance for nonbankruptcy courts and litigants.

This appeal illustrates the problem and the confusion. The debtor ("Beaty") ignored the state court proceeding until after the judgment for fraud and willful and malicious conduct was entered and then tried to block collection proceedings (and assessment of punitive damages) by filing a "Notice of Injunction" in which he inaccurately represented that the discharge functioned to enjoin prosecution of the particular lawsuit in that court—it did not and does not. Selinger's money judgment would be enforceable if some court with jurisdiction (state courts have concurrent jurisdiction over § 523(a)(3) disputes) were to decide the § 523(a)(3)(B) question in Selinger's favor. Whatever one may think of the utility or ethics of a tactic of trying to let opponents and nonbankruptcy courts be bamboozled about matters of bankruptcy law, such tactics disserve the law and in this instance launched an eight-year-and-counting odyssey.

As I shall explain, the correct result in reviewing the summary judgment in Beaty's favor is to view Selinger's 1993 California judgment for fraud and willful and malicious conduct in the light most favorable to Selinger, which is that it qualifies for issue and claim preclusion under California law, with the consequence that (Beaty having admitted the other essential elements in his answer) the debt is presumptively nondischargeable under § 523(a)(3)(B). Selinger's § 523(a)(3)(B) action was timely filed, there being no limitations period. Assuming, without deciding, that the protection of laches applies, it was an abuse of discretion to impose laches because Selinger was diligent, Beaty (particularly if California's issue and claim preclusion rules apply with respect to the dispositive substantive questions) was not prejudiced by being unfairly deprived of the ability to defend in an action to determine the discharge status of the 1993 California judgment, and because any arguable prejudice was self-inflicted.

Before explaining in greater detail, it is necessary to restate the salient facts.

## FACTS

Appellee Thomas Beaty was a joint debtor in a chapter 7 bankruptcy case filed September 12, 1991, that resulted in a discharge entered January 10, 1992, and that continued to be administered by the chapter 7 trustee until April 1995.

Appellant David Selinger was, when Beaty's bankruptcy case was commenced, the plaintiff in a pending civil action entitled *Selinger v. Saraston Dev. Co. & Does 1–50*, filed January 17, 1991, in San Diego County Municipal Court alleging, among other things, fraud and willful and malicious conduct.

Although all of Beaty's relevant fraudulent and willful and malicious conduct occurred before bankruptcy, neither Beaty nor Selinger knew each other's identity until after the deadline for nondischargeability actions.

The state court substituted Beaty for defendant Doe 3 in March 1992, about two months after Beaty's discharge issued. Beaty did not respond to service.

The state court entered a default judgment against Beaty on June 10, 1993. The face of the judgment recited that Beaty had been served and had not responded, that the court had taken evidence, that Beaty had willfully suppressed a material fact to Selinger's detriment, and that Beaty's "conduct was fraudulent, willful, malicious, and in conscious disregard for the rights of" Selinger. It awarded general damages of $5,000 and unspecified costs and specified that punitive damages would "be determined at a later date." The court also ordered that Beaty produce various financial records and testify at deposition regarding his wealth.

Beaty responded by filing on June 17, 1993, a "Notice of Injunction Against Further Proceedings" to which was attached a copy of the discharge and which stated: "[t]he effect of this Discharge of Debtor is equivalent to an automatic injunction against creditors from commencing or continuing any lawsuit, enforcement of any judgment, enforcement of any lien against property, or continuing any levy on property, including wages; or to take any action to [en]force any such claim."

Selinger, acting pro se, filed an adversary proceeding on August 29, 1994, "objecting" to Beaty's discharge under 11 U.S.C. § 727, notwithstanding that the discharge had been entered January 10, 1992. The bankruptcy court dismissed the § 727 adversary proceeding on June 13, 1995. Selinger appealed to the U.S. District Court for the Southern District of California, which court affirmed the dismissal on April 14, 1997.

On April 24, 1998, Selinger, again acting pro se, filed both a motion to reopen the parent bankruptcy case and an adversary proceeding seeking a determination of dischargeability of the judgment debt under § 523(a)(3)(B).

Selinger alleged that the underlying judgment debt was nondischargeable under §§ 523(a)(2), (4), and (6), and that he did not know of the existence of Beaty's bankruptcy case in time to file a timely complaint under §§ 523(a)(2), (4), and (6).

The relief Selinger requested was a declaration that the judgment debt was nondischargeable, that the discharge injunction be "modified" so as to allow continued prosecution of the state court action to determine punitive damages, costs and fees, and that any such future award be similarly nondischargeable.

Although the bankruptcy court denied the motion to reopen the bankruptcy case on the premise that reopening was irrelevant to dischargeability, another bankruptcy judge nevertheless dismissed Selinger's § 523(a)(3)(B) complaint, ruling that it was time barred as of the original December 16, 1991, deadline for actions under §§ 523(a)(2), (4), and (6), and that the denial of the motion to reopen compelled dismissal. Selinger appealed.

Our prior panel reversed, ruling that § 523(a)(3)(B) complaints may be filed "at any time" and that reopening the parent bankruptcy case is irrelevant to the bankruptcy court's exercise of jurisdiction over a § 523(a)(3)(B) complaint. And we refused to entertain Beaty's argument raised for the first time on appeal that laches should be applied to defeat Selinger's complaint. *Selinger v. Beaty (In re Beaty)*, No. SC–98–1657–JRRy (9th Cir. BAP Dec. 30, 1999).

On remand, Beaty answered, admitting Selinger's allegation that he did not know of the bankruptcy before the original deadline to file complaints under §§ 523(a)(2),

(4), and (6), and asserting laches as an affirmative defense.

Beaty and Selinger each moved for summary judgment—one on laches, the other on issue preclusion (collateral estoppel). The bankruptcy court granted Beaty's laches motion, denied Selinger's cross motion on the issue preclusion theory, and dismissed the complaint with prejudice. A timely motion to alter or amend was denied. This appeal ensued.

## DISCUSSION

### I

I am not persuaded by the majority's reasoning that laches is not applicable to any § 523(a)(3) action in general. Nor do I think that such a view is a logical extension of Judge O'Scannlain's *Beezley* concurrence. *Beezley v. California Land Title Co. (In re Beezley)*, 994 F.2d 1433 (9th Cir.1993), *noted in* Helbling & Klein, *The Emerging Harmless Innocent Omission Defense to Nondischargeability under Bankruptcy Code § 523(a)(3)(A): Making Sense of the Confusion over Reopening Cases and Amending Schedules to Add Omitted Debts*, 69 AM.BANKR.L.J. 33, 52–53 (1995). Moreover, the authorization in Rule 4007(b) for filing such an action "at any time" does not, in my view, forbid a court from applying laches in appropriate circumstances; in other words, the phrase "at any time" does not mean "at any time no matter what and no matter how inequitable." FED.R.BANKR.P. 4007(b).

Regardless of what one may think about the potential role for laches under § 523(a)(3)(A), the prospect of a "trial within a trial" is key to understanding the potential role for laches as a § 523(a)(3)(B) defense.

The essential elements of § 523(a)(3)(B) include the formal prerequisites that the creditor was neither listed nor scheduled and did not otherwise know of the bankruptcy in time to file a timely dischargeability action under § 523(a)(2), (4), or (6) and, in addition, require proof of all the essential elements of those subsections in what amounts to a trial within a trial. *Fidelity Nat'l Title Ins. Co. v. Franklin (In re Franklin)*, 179 B.R. 913, 923–24 (Bankr.E.D.Cal.1995).

The unavailability of laches creates opportunities for mischief. Consider a hypothetical (innocently) omitted creditor who has documentary evidence suggestive of fraud in a completed transaction; assume further that the testimony of a particular percipient witness would dispel all inference of fraud in the mind of any rational trier of fact. If that creditor, knowing that the key defense witness is terminally ill and knowing that a § 523(a)(3)(B) action can be filed "at any time," intentionally defers making any assertion of fraud until after the key witness dies, then the inability to invoke laches would be a problem.

Although the majority accurately observes that one defensive measure for the debtor who knows there exists a potential omitted debt nondischargeability action is to preempt the creditor's ability to control timing by filing a § 523(a)(3)(B) action seeking a determination that the debt was discharged, such a preemptive strike strategy has no utility for a debtor who has no reason to suspect the existence of such a cause of action.

In short, there is a potential role for the laches defense in actions under § 523(a)(3). The majority's attempt to use the instant appeal, in which laches was incorrectly applied, as the occasion to banish laches from § 523(a)(3)(B) risks throwing out the baby with the bath water.

### II

The correct resolution of this appeal is to assume, without deciding, that laches is

available and to focus upon the plain error of applying laches against Selinger.

Laches generally requires proof of (1) lack of diligence by the plaintiff and (2) prejudice to the defendant. *Costello v. United States,* 365 U.S. 265, 282, 81 S.Ct. 534, 5 L.Ed.2d 551 (1961); *United States v. Marolf,* 173 F.3d 1213, 1218 (9th Cir. 1999). To which is added the requirement that the defendant must not have engaged in conduct that impairs the plaintiff's diligence. *Holmberg v. Armbrecht,* 327 U.S. 392, 396, 66 S.Ct. 582, 90 L.Ed. 743 (1946); 30A C.J.S. *Equity* § 151 (1992).

Beaty loses on all three counts. First, Selinger has been nothing if not persistent. He has been prosecuting, with pertinacity and undaunted by failure, some action addressed to the bankruptcy status of the judgment debt for most of the eight years since the problem arose. This is diligence.

To the extent that the bankruptcy court charged Selinger with lack of diligence for not figuring out the correct remedy in the first instance, it erred. It is settled that a long-term failure to figure out the appropriate remedy, even though the remedy is well known, is not sufficient to warrant laches if the party has been otherwise diligent and there is no prejudice. *Southern Pac. Co. v. Bogert,* 250 U.S. 483, 39 S.Ct. 533, 63 L.Ed. 1099 (1919). Indeed, the similarity of the instant situation to *Bogert,* where the plaintiffs spent 22 years litigating various actions challenging a corporate reorganization before they figured out the correct remedy, is striking. *Bogert,* 250 U.S. at 488–89, 39 S.Ct. 533.

Moreover, while the § 523(a)(3)(B) remedy was plain on the face of the statute, it was not well-understood during the relevant period. Rather, the 1990's was a period during which the decisional law was working itself out. *Compare Costa v. Welch (In re Costa),* 172 B.R. 954, 961–65 (Bankr.E.D.Cal.1994), *and Franklin,* 179

B.R. at 918 & 924, *with Menk v. LaPaglia (In re Menk),* 241 B.R. 896, 916 (9th Cir. BAP 1999), *and* Helbling & Klein, *supra.* In short, Selinger was plainly diligent.

Second, Beaty did not demonstrate prejudice. There is no indication that his ability to defend the discharge status of the debt to Selinger has been made more difficult by virtue of the passage of time. To the contrary, the Ninth Circuit's *Baldwin–Harmon* doctrine suggests that probably nothing of a factual nature relating to the merits of Beaty's fraud and willful and malicious conduct remains to be litigated. *Baldwin v. Kilpatrick (In re Baldwin),* 249 F.3d 912 (9th Cir.2001); *Harmon v. Kobrin (In re Harmon),* 250 F.3d 1240 (9th Cir.2001). And Beaty has in his answer apparently conceded the balance of the essential elements of an action under § 523(a)(3)(B).

Finally, Beaty bears considerable responsibility for the fact that this has dragged on for years. The Notice of Injunction that he filed in the state court in an effort to block judgment collection unambiguously misstated the law regarding the effect of the discharge when it said that: "[t]he effect of this Discharge of Debtor is equivalent to an automatic injunction against creditors from commencing or continuing any lawsuit, enforcement of any judgment, enforcement of any lien against property, or continuing any levy on property, including wages; or to take any action to [en]force any such claim." To the contrary, under black-letter law, the discharge injunction does not shield the debtor from actions on *nondischargeable* debt. Beaty may have hoped that Selinger would be bamboozled into abandoning the quest in the face of Beaty's misstatement of the law, but it should be counted as self-inflicted delay that precludes him from complaining that it took Selinger too long to figure out that he was being conned.

In sum, I would assume (without deciding) that laches is available as a defense to § 523(a)(3)(B) actions and reverse the application of laches in this instance.