**In re FARMLAND INDUSTRIES, INC., et al., Debtors.**

**No. 02–50557–JWV.**

United States Bankruptcy Court, W.D. Missouri.

Nov. 27, 2002.

Erlene W. Krigel, Krigel & Krigel, PC, Kansas City, MO, for Smithfield Foods, Inc.

Christopher A. Artzer, Akin, Gump, Strauss, Hauer & Feld, Houston, TX, Christopher J. Redmond, Gary D. Barnes, Husch & Eppenberger, Kansas City, MO, Henry J. Kaim, S. Margie Venus, Houston, TX, for Official Committee of Unsecured Creditors of Farmland Industries, Inc.

Daniel J. Flanigan, James E. Bird, Polsinelli, Shalton & Welte, PC, Kansas City, MO, Kathleen R. Pasulka–Brown, Mark L. Prager, Michael J. Small, William J. McKenna, Foley & Lardner, Chicago, IL, for Official Committee of Bondholders of Farmland Industries, Inc.

Cynthia Deillard Parres, Kansas City, MO, Frank W. Lipsman, Morton, Hummard, Ruzicka & Kreamer, Olathe, KS, Laurence M. Frazen, Mark G. Stingley, Robert M. Thompson, Bryan Cave, LLP, Kansas City, MO, Ronald S. Weiss, Berman, DeLeve, Kuchan & Chapman, Kansas City, MO, for Debtor.

Jerry L. Phillips, Paula C. Acconia, Office of U.S. Trustee, Kansas City, MO, for U.S. Trustee.

Bruce E. Strauss, Thomas N. Lane, Merrick, Baker & Strauss, Kansas City, MO, Robert S. Blanc, Houston, TX, for American Plant Food Corp.

Thomas M. Franklin, Kansas City, MO, for Equalizer, Inc.

Thomas J. O'Neal, Shugart, Thomson & Kilroy, Springfield, MO, for Bartlett Grain Co., L.P.

## MEMORANDUM OPINION AND ORDER

JERRY VENTERS, Bankruptcy Judge.

The matter now before the Court for decision is a rather vigorously contested Motion filed by Farmland Industries, Inc., et al., the Debtors in these jointly administered Chapter 11 cases ("Debtors"), requesting an extension of time, until February 28, 2003, in which to file the disclosure statement required by 11 U.S.C. § 1125. Because of the urgency of the issue, the parties have submitted it to the Court on the papers filed and have requested the Court to rule on an expedited basis.[1]

On November 12, 2002, the Debtors filed a Motion (the "Motion") pursuant to Federal Rule of Bankruptcy Procedure 3016(b) requesting an extension of time, until February 28, 2003, in which to file their disclosure statement in support of an anticipated Plan of Reorganization. The Motion was scheduled for hearing on an accelerated

---

1. The Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). This Memorandum Opinion and Order constitutes the Court's findings of fact and conclusions of law pursuant to Rule 7052, Fed.R.Bankr.P., made applicable by Rule 9014, Fed.R.Bankr.P.

basis on November 19, 2002, at the request of Deutsche Bank Trust Company Americas ("Bank"), the agent for a group of lenders providing both pre-petition and debtor-in-possession financing for the Debtors. However, on November 19 the parties agreed that the Motion should be continued to November 26, and on November 25 it was agreed by counsel for the Debtors and the Bank that the Motion could be submitted on the papers filed, without a hearing and without oral argument.

The Motion is opposed by the Bank but is supported by the Official Committee of Unsecured Creditors (the "Creditors Committee") and the Official Committee of Bondholders ("Bondholders Committee"), all of whom have filed pleadings within the last week in support of or in opposition to the Motion. The Court has considered all of the papers filed and the authorities cited and is prepared to rule on the Motion.

## FACTUAL BACKGROUND

A brief bit of background will be helpful to an understanding of the present situation.

The Debtors filed their voluntary Chapter 11 petitions on May 31, 2002. Farmland Industries, Inc., ("Farmland"), the principal debtor, is a farmer-owned cooperative which, in conjunction with some of the debtor subsidiaries and other non-debtor subsidiaries, manufactures and markets fertilizer and operates an integrated food and food-processing business. The Debtors own property and operate businesses in several states, primarily in the Midwest, and have annual sales in the billions of dollars. At the time of filing, the Debtors represented that they had assets of $2.7 billion and liabilities of $1.9 billion.

As a part of the initial Chapter 11 proceedings, the Debtors sought Court approval, pursuant to 11 U.S.C. § 364, for debtor-in-possession financing ("DIP financing") from a group of lenders whose agent is Deutsche Bank.[2] Among other things, the DIP Credit Agreement entered into by the Debtors and the Bank provided that the DIP financing could be terminated after November 27, 2002, if the Debtors did not file a Plan of Reorganization approved by the Bank on or before that date. This deadline could be avoided, however, either by the Bank's granting a waiver of the requirement or by the Debtors' obtaining another source of financing that would take the Bank out of the picture.[3]

Under 11 U.S.C. § 1121, the debtor in a Chapter 11 proceeding has an exclusive period of 120 days in which only the debtor may file a plan of reorganization ("plan").[4] If a plan is filed within that exclusive period, the debtor then has an additional period of 60 days in which to obtain acceptance of the proposed plan, and no other party may file a competing plan during that time. 11 U.S.C. § 1121(c). On request of a party in interest, and after notice and a hearing, the court may for cause reduce or increase the 120–day period or the 180–day period. 11 U.S.C. § 1121(d). Section 1125 of the Bankrupt-

---

**2.** For ease of reference, Deutsche Bank and this group of lenders will be referred to herein as "the Bank."

**3.** The revolving credit facility under the DIP Credit Agreement with the Bank is a maximum of $306 million. It is secured by a post-petition first priority lien on most of the Debtors' assets.

**4.** Section 1121(b) provides:

> (b) Except as otherwise provided in this section, only the debtor may file a plan until after 120 days after the date of the order for relief under this chapter.

11 U.S.C. § 1121(b).

cy Code[5] prohibits a debtor (or other proponent of a plan) from soliciting votes for acceptance of a plan unless a written disclosure statement approved by the Court is provided to the holders of a claim or interest whose votes are being solicited.[6]

In this case, the Debtors' original exclusive period to file their plan was to expire on September 24, 2002. However, as authorized by § 1121(d), the Debtors sought and obtained an extension of the exclusive period until November 27, 2002, the "deadline" date contained in the DIP Credit Agreement for possible termination of the DIP financing by the Bank if an approved plan was not filed. Then, as November 27 approached, the Debtors sought another extension of the plan filing deadline, until March 27, 2003. That request came on for hearing before the Court on November 19, 2002, at which time the Debtors and the Bank announced that they had agreed that the exclusivity period could be extended to March 27, 2003, although no agreement had been reached with the Bank for a waiver of the November 27 deadline and the Debtors had not obtained another lender to provide the funds necessary to take out the Bank.[7] At the hearing on November 19, the Debtors announced that they would be prepared to file their plan on November 27, but that they would not be prepared to file their disclosure statement at that time and would need additional time in which to prepare the disclosure statement.

This, then, brings us to the present controversy.

## DISCUSSION

The Debtors' request for an extension of time in which to file the disclosure statement is founded on Rule 3016(b), Fed. R.Bankr.P., which provides:

> (b) *Disclosure Statement.* In a chapter 9 or 11 case, a disclosure statement under § 1125 or evidence showing compliance with § 1126(b) of the Code shall be filed with the plan *or within a time fixed by the court.*

Rule 3016(b) (emphasis supplied).

In support of their request, the Debtors state that they are continuing to develop significant financial and legal documents and analyses that will be necessary for a full description and explanation of the plan. However, the Debtors state that to commit those documents and analyses to a formal disclosure statement now would be (1) unrealistic, (2) a great waste of estate assets, and (3) necessarily imprecise given the current state of those documents and analyses. The Committees argue that the Debtors should have more time to put together an accurate disclosure statement, rather than being required to file a disclosure statement that might be incomplete, faulty, or misleading.

The Bank, on the other hand, terms the Motion "a charade" and "a gambit," among other things, and asserts that it is nothing more than a thinly veiled attempt by the

---

**5.** Title 11, United States Code.

**6.** Section 1125(b) provides:
(b) An acceptance or rejection of a plan may not be solicited after the commencement of the case under this title from a holder of a claim or interest with respect to such claim or interest unless, at the time of or before such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a written disclosure statement approved, after notice and a hearing, by the court as containing adequate information...
11 U.S.C. § 1125(b).

**7.** Although the parties announced in open Court on November 19 that they had agreed to an extension of the deadline for the Debtors to file a plan, a proposed Order has not yet been submitted to the Court.

892

Debtors to extend the exclusive period for obtaining acceptance of a timely filed plan without meeting the requirements of the Bankruptcy Code. Since a debtor (or other plan proponent) is prohibited from soliciting acceptances of a filed plan without a court-approved disclosure statement, the Bank argues, a filed plan without an accompanying disclosure statement "is a legal nullity." The Bankruptcy Code clearly contemplates the filing of a plan and disclosure statement together, the Bank argues.

The parties acknowledge, either expressly or implicitly by the dearth of cited authority, that there is little developed law to guide the Court in deciding this issue. Thus the Court writes on something of a clean slate. In doing so, the Court must keep in mind the rubric that "Congress says in a statute what it means and means in a statute what it says there." *Hartford Underwriters Insurance Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 120 S.Ct. 1942, 1947, 147 L.Ed.2d 1 (2000). The same rule applies to the interpretation and application of Court rules. *In re Beaty*, 268 B.R. 839, 846 (9th Cir. BAP 2001) (courts are not at liberty to rewrite the Code or the Rules).

The proponents of the Debtors' Motion correctly point out that the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure do not require that a plan of reorganization and disclosure statement be filed at the same time. Sections 1121 and 1125, which deal with the filing of plans and disclosure statements, do not at any time require that the two documents be filed contemporaneously. However, the Court tends to agree with the Bank that, at least by implication, the Code seems to contemplate that the plan and disclosure statement would be filed, if not at the same time, then at approximately the same time. And, by and large, that is the normal practice. Pursuant to § 1125(b), as previously noted, a party cannot solicit acceptances of a filed plan without providing a court-approved disclosure statement to the creditors either at or before the time of solicitation. 11 U.S.C. § 1125(b). Since the goal of Chapter 11 is the reorganization of the bankrupt debtor, and since reorganization is dependent on the approval or confirmation of a plan of reorganization, and since there can be no solicitation of votes for confirmation of a plan without a disclosure statement, it is rather obvious that you cannot have one without the other. Until a disclosure statement is filed—and approved by the Court as containing adequate information to allow the creditors to vote intelligently on the plan[8]—the case simply cannot move forward toward the eventual goal of reorganization. Without a disclosure statement, the plan is essentially stuck in neutral.

In support of this argument, the Bank has directed the Court's attention to *In re Lange*, 75 B.R. 154 (Bankr.N.D.Ohio 1987), in which the Court states: "The disclosure statement is integrally related to the plan, and the filing of a plan without a disclosure statement is not only contrary to law but further provides no basis for evaluation of the plan." *Lange*, 75 B.R. at 157. While the quote is accurately set out, *Lange* really does not assist the Bank here. First of all, the Court misstates the effect of Rule 3016(b)[9]; the filing of a plan without a disclosure statement is *not* contrary to law. Secondly, *Lange* is completely inapposite on the facts. *Lange* involved an individual

---

8. "An approved disclosure statement is necessary in order to allow... creditors to vote intelligently." *In re Rail King, Inc.*, 33 B.R. 4 (Bankr.N.D.Ohio 1983).

9. The provision at issue was at that time contained in Rule 3016(c).

debtor who filed a Chapter 11 petition after the foreclosure sale of her house, and then filed an obviously inadequate plan without a disclosure statement. The issue was whether the debtor's Chapter 11 petition had been filed in bad faith, and one indicia of that was that the debtor had not filed the required disclosure statement. It was in that context that the Court made its observations concerning the filing of a disclosure statement.

■ The plain language of Rule 3016(b) refutes the position of the Bank and supports the position of the Debtors in this case.[10] The Rule very clearly states that a disclosure statement "shall be filed with the plan or within a time fixed by the court." Rule 3016(b). Thus, the filing of a plan without at the same time filing a disclosure statement is not contrary to the Bankruptcy Rules. The Advisory Committee Note (1983) to Rule 3016 makes it clear that a court could allow the filing of a disclosure statement after the filing of the plan of reorganization:

> Subdivision (c) [now subdivision (b)] of this rule provides time for filing the disclosure statement or evidence of compliance with section 1126(b) which ordinarily will be with the plan, *but the court may allow a later time or the court may, pursuant to the last sentence, fix a time certain.*

Rule 3016(b), Fed.R.Bankr.P., Advisory Committee Note (1983), as published in 9 Collier on Bankruptcy, ¶ 3016, pp. 3016–8 (15th ed. rev.2002). (emphasis added)

The Bondholders Committee cites Norton Bankruptcy Law and Practice 2d as follows:

Often, a debtor will file an initial proposed plan before it has conducted negotiations with all constituencies. In such circumstances, the plan may be subjected to subsequent amendments and, as a practical matter, it may be a needless exercise for the debtor to prepare and file a disclosure statement until the debtor is ready to proceed with the confirmation process.

4 Norton Bankruptcy Law and Practice 2d § 91:7 (2002).

In their Response to the Bank's objections, the Debtors quote *Collier on Bankruptcy* to the following effect:

> [T]here is no provision in the rule for a penalty for failure to file a disclosure statement at the same time as the plan is filed or to obtain an extension of time for filing the disclosure statement. It will sometimes be the case that the disclosure statement is not ready for filing as of the deadline for filing a plan. In such cases, there is no prohibition on the filing of a plan without a disclosure statement, notwithstanding Rule 3016(b). A contrary reading would accord a substantive force to the rule; since the statute does not require contemporaneous filing of [a] plan and disclosure statement.

9 Collier on Bankruptcy ¶ 3016.03, pp. 3016–3, 4 (15th ed. rev.2002).

■ Surely, the language of the Rule must be read as having some meaning and effect. The Rule states that a disclosure statement "must be filed either with the plan or within a time fixed by the court." Clearly, there are two points, then, at which the disclosure statement can be filed—either at the same time as the plan is filed or within a later time fixed by the

---

**10.** Interestingly, in their first motion requesting an extension of the exclusivity period, the Debtors stated: "Under 11 U.S.C. § 1125, a disclosure statement must accompany the plan." That sentence is notably absent from the Debtors' second motion for extension. It is also a misstatement of the law.

court. To accept the Bank's argument would require us to read the last sentence out of the Rule, and thus render the provision surplusage. Such a construction of the Rule is impermissible. *See In re Public Service Company of New Hampshire,* 95 B.R. 275 (Bankr.D.N.H.1988).

■ Considering these authorities, and applying them to the facts of this case, the Court believes that this is the type of situation contemplated by the drafters of Rule 3016(b), and that it would be appropriate to grant the Debtors' request for an extension of time in which to file their disclosure statement. First and foremost, this is a very complex case in which the Debtors have continued with the operation of a myriad of businesses, from a petroleum refinery to food processing plants to retail farm supply stores. There are roughly 75,000 creditors and the Debtors have total debts of almost $2 billion. Critical to the development of a disclosure statement as well as a plan, there are three very substantial creditor constituencies with which the Debtors have had to deal and attempt to work out an acceptable plan. There have been many contentious issues from the beginning, not the least of which was the Debtors' "first-day" motion to obtain approval for the DIP Credit Agreement that it had struck with the Bank. The Debtors have been ably represented by well-qualified counsel, who have prosecuted this case with diligence and vigor. There is no indication that the request for an extension of time to file the disclosure statement is an illegal or improper ploy to gain an advantage over any particular creditor group or to place any particular creditor group at a disadvantage. Requiring the Debtors to file an incomplete or "bare bones" disclosure statement now, simply for purposes of meeting a date deadline, would serve no

useful purpose and waste valuable time and resources.

What makes this case unique—and makes the Debtors' lot a difficult one—is that the DIP Credit Agreement with the Bank requires that a plan approved by the Bank must be filed by November 27, 2002, or the Bank may declare a default in the DIP financing and terminate the financing without further notice. Without the DIP financing provided by the Bank, the Debtors would quickly be out of business. The Debtors assert that the Bank is objecting to the Motion in an effort to gain leverage to demand more favorable treatment under the plan and to renegotiate terms of the DIP Credit Agreement. That may well be true. However, the Debtors point out that the DIP Credit Agreement does not require that a disclosure statement be filed by November 27; it only requires that a plan be filed by that date, and therefore, by filing the plan on November 27, the Debtors will be in compliance with that requirement of the DIP Credit Agreement. Since the Bank drafted the Credit Agreement, the Debtors argue, the Bank could well have inserted the additional requirement that a disclosure statement be filed at the same time as the plan, but it failed to do so. While this argument is technically correct, it may very well contravene the spirit and intent of the DIP Credit Agreement, and in any event is not likely to win friends among the banks in the lender group headed by the Bank, but that is for the parties to sort out, not this Court.[11]

In its Surreply, the Bank argues that the Debtors' Motion is "a gambit" designed to allow the Debtors to take advantage of the 60–day "secondary" exclusivity period in which to obtain approval of the timely filed plan, which the Bank contends

---

**11.** At least not at this time.

is totally deficient and nothing more than a "facade." The Bank asserts that the draft of a plan tendered to the Bank for its approval "is nothing more than the bare structure of a plan of reorganization without any of the detail necessary to a real plan." The Bank asserts that its counsel's suggestions on the draft plans circulated by the Debtors have been ignored. This is, of course, not the time or place for the Court to attempt to assess the adequacy or sufficiency of any plan that has been tendered to the Bank for its approval. It could well be that the Bank will exercise its prerogative and declare the Debtors in default of the DIP Credit Agreement, but as the Bank comments, compliance with that Agreement will await a proper day. Contrary to the Bank's position, an argument could be made that the Debtors' failure to put together a fully developed, comprehensive plan by the November 27 deadline—a deadline that they have been acutely aware of from the inception of this case nearly six months ago—is evidence that the Debtors actually do need more time to put meat on the bones of the plan as well as a disclosure statement in support of that plan.

Having concluded that the Debtors should be allowed additional time to prepare and file a disclosure statement, the Court must decide how much of an extension would be appropriate. The Court believes that the extension to February 28, 2003, as requested by the Debtors is excessive, and determines that an extension to January 15, 2003, would be appropriate. Admittedly, the fixing of any deadline by the Court must be somewhat arbitrary, just as the Debtors' request for an extension to February 28, 2003, was somewhat arbitrary. In any event, an extension to January 15, 2003, will allow the Debtors approximately an additional 50 days in which to prepare the disclosure statement, as well as any necessary amendments to the plan that might be negotiated with the creditor constituencies in the meantime. Such an extension should be adequate.

For the foregoing reasons, it is therefore

**ORDERED** that the Debtors' Motion (Document # 1383) for an extension of time in which to file the disclosure statement required by 11 U.S.C. § 1125 be and is hereby GRANTED in part, pursuant to the provisions of Rule 3016(b), Federal Rules of Bankruptcy Procedure, and the Debtors are hereby granted until January 15, 2003, to file their disclosure statement. All objections to the Motion are hereby overruled.