No. 93-359

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994

IN RE THE MARRIAGE OF

JANICE C. HAHN, f/k/a
Janice Cladouhos,

     Petitioner and Respondent,

  and

THOMAS P. CLADOUHOS,

     Respondent and Appellant.

APPEAL FROM:  District Court of the First Judicial District,
In and for the County of Lewis and Clark,
The Honorable Thomas C. Honzel, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        David N. Hull, Attorney at Law,
        Helena, Montana

    For Respondent:

        Jacqueline Terrell Lenmark, Keller, Reynolds,
        Drake, Johnson & Gillespie, Helena, Montana

FILED

Filed: FEB 08 1994

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

Submitted on Briefs: November 4, 1993

Decided: February 8, 1994

Clerk

Justice William E. Hunt, Sr., delivered the opinion of the Court.

This is an appeal from the First Judicial District, Lewis and Clark County, regarding the enforcement of a dissolution agreement entered into by respondent Janice C. Hahn, f/k/a Janice Cladouhos, and appellant Thomas P. Cladouhos. The District Court found that under the terms of the dissolution agreement Thomas was obligated to pay Janice the maintenance payments which were part of the property settlement. The District Court denied Thomas's motion to dismiss Janice's motion to enforce the property settlement based on the doctrine of laches, and also denied both parties their attorney fees. Thomas appeals from the order of the District Court.

We affirm.

We restate the issues as follows:

1. Did the District Court err when it denied Thomas's motion to dismiss Janice's pleading to enforce the maintenance provision, based on the doctrine of laches?

2. Did the District Court err when it found that the maintenance payments were part of the property settlement that did not terminate upon Janice's remarriage pursuant to § 40-4-208(4), MCA?

3. Did the District Court err by failing to award Thomas his reasonable costs and attorney fees incurred in enforcing the court's prior order?

Thomas and Janice were married in June 1965. Two children were born to the couple, with one minor child living at home at the time of the dissolution in 1990. The couple had a hostile and

2

difficult period of negotiations before agreeing to the custody, support, and property settlement agreement which was incorporated into the decree of dissolution on October 2, 1990.

The agreement provides that the couple would pay specific amounts to each other as a distribution of the marital estate property. Paragraph 8 of the agreement provides that the family home be awarded to Janice with the requirement that Janice compensate Thomas for half of the estimated realtor fee of $4200 if Janice did not sell the family home within two years of the agreement. Paragraph 18(a) provides that Thomas pay to Janice monthly payments of $650 for 15 months, beginning November 1990 "for her own support, care and maintenance." Also, paragraph 18(b) provides that the funds in 18(a) are in the nature of a property settlement. Paragraph 18(b) adds that the payments under 18(a) are considered maintenance for tax purposes.

On July 25, 1991, Janice remarried and Thomas immediately stopped making the maintenance payments, claiming that maintenance payments automatically discontinue upon her remarriage pursuant to § 40-4-208(4), MCA. Thomas demanded that Janice pay the required realtor fee of $4200 pursuant to paragraph 8 of the agreement because she did not sell the family home within two years of the agreement. Janice tried to resolve the matter by offering to offset the delinquent maintenance payments against the realtor fee. Thomas refused the offer.

On December 15, 1992, Thomas filed a motion with the District Court requesting that it hold Janice in contempt for failure to

3

comply with the agreement and order her to pay him $4200 for half the realtor fees. Thomas also requested costs and attorney fees allowed by the agreement.

On January 15, 1993, Janice filed a cross-motion for contempt requesting the court hold Thomas in contempt for failure to pay maintenance as provided by the agreement, claiming that he owed her six property settlement payments totaling $3900. On February 16, 1993, Thomas filed a motion to dismiss Janice's motion based on the doctrine of laches, that Janice, without adequate explanation, failed to timely pursue court action to enforce these payments, rendering the enforcement of her asserted rights inequitable.

On April 15, 1993, the matter was heard by the District Court with both parties offering testimony and evidence. On April 16, 1993, the court issued its findings of fact, conclusions of law, and order and memorandum. The order denied both parties' motions to hold each other in contempt, and denied Thomas's motion to dismiss Janice's motion based on laches. The court found that the maintenance payments were part of the property settlement, and that Thomas was delinquent on five payments and owed Janice $3250, and Janice owed Thomas $4200 for half the realtor fee. Thomas was entitled to $950, which was the difference between the $4200 Janice owed him, and the $3250 he owed Janice. The court also ordered that both parties pay their own costs and attorney fees.

On May 3, 1993, Thomas filed a motion to reconsider, which the court denied. Judgment was entered against Thomas, and he appeals.

4

Did the District Court err when it denied Thomas's motion to dismiss Janice's pleading to enforce the maintenance provision, based on the doctrine of laches?

Section 1-3-218, MCA, provides that "[t]he law protects the vigilant before those who sleep on their rights." Laches is a concept of equity that can apply when a person is negligent in asserting a right, and can apply where there has been an unexplained delay of such duration or character as to render the enforcement of the asserted rights inequitable. Fillner v. Richland (1991), 247 Mont. 285, 290, 806 P.2d 537, 540. Each case must be determined on its own unique facts. Fillner, 806 P.2d at 540.

This case involves a written dissolution agreement. Section 40-4-201(5), MCA, provides that marital or property settlement agreements are enforceable as contracts. See also, In Re Marriage of McKeon (1992), 252 Mont. 15, 18-19, 826 P.2d 537, 540. The statute of limitations to enforce a written contract is eight years. Section 27-2-202(1), MCA. When a claim is filed within the time limit set by the analogous statute, the defendant bears the burden to show that extraordinary circumstances exist which require the application of laches. McGregor v. Mommer (1986), 220 Mont. 98, 107, 714 P.2d 536, 542.

Here, Janice filed her claim to enforce the maintenance payments 15 months after Thomas stopped making the payments. Her filing was within the eight year statutory time limit. Therefore,

5

Thomas bears the burden to show that extraordinary circumstances exist which require the application of laches.

Thomas argues that the maintenance payments to Janice automatically terminated upon Janice's remarriage. Janice knew his position and she sat on her rights for 15 months and did not pursue court action to enforce the payments until January 15, 1993. He asserts that the District Court erred when it found that Janice had a reasonable explanation for the delay, and further, it was inequitable for the court to uphold her claim.

Thomas failed to provide facts to prove that Janice's delay was unexplained. The District Court examined the circumstances surrounding the delay and in its findings stated the following:

13. When Tom ceased making the maintenance payments, Jan wrote Tom regarding this fact. She did not, however, commence court action. She testified that she did not start court action because it could be expensive; that their daughter Camille was having problems and that she thought the friction between the two parents was damaging their daughter; and that she did not want to damage their daughter further.

The District Court's findings are supported by the record. The record shows that when Thomas stopped making payments, the couple was still involved in hostile conversations concerning custody and visitation. Additionally, the couple's daughter was troubled about the friction between them and was seeing a counselor. The couple attended counseling sessions attempting to recover from the misunderstandings created from the dissolution process. Janice attempted to reconcile the disagreements, hoping to avoid litigation which would increase the friction between them.

6

the terms.  Section 28-2-905(1), MCA.  The District Court, in its findings, considered the following correspondence proposed by Janice's counsel before the final agreement:

> Jan will agree to accept $650.00 a month maintenance for a period of 15 months.  Additionally, she will agree that the maintenance will terminate upon her death or remarriage.  Based on my advice, however, she will not agree that the maintenance be modifiable.  The period of time over which Tom will be paying maintenance is only slightly more than a year.  It is part of the property settlement that the parties are negotiating.  In view of the fact that Jan is willing to reduce her request for maintenance from five years to 15 months, it seems a fair compromise on Tom's part to agree that it not be modifiable for those 15 months, especially in view of the fact that he is receiving a significant tax benefit as a result of characterizing this portion of the monthly support payments as maintenance.

The District Court, also considered in its findings, the following response from Thomas's counsel:

> On August 16, 1990, counsel for Tom responded to Jan's proposal.  With respect to the provision on maintenance he stated:  "Tom agrees with this provision as stated in your August 15th letter."

The District Court rejected Thomas's argument that the letters prove that the payments are maintenance which were terminated by § 40-4-208(4), MCA.  The court looked to the final agreement for the contract terms.  The court, in its findings, quoted the following paragraphs of the agreement:

> 18. <u>MAINTENANCE AND DISTRIBUTION OF ASSETS</u>: (a)  THOMAS shall pay to JANICE for 15 months commencing on the 1st day of [the] month following the execution of this Agreement, the sum of $650.00 monthly for her own support, care, and maintenance.
>
> (b) The sums agreed to in paragraph 18(a) are in the nature of a property settlement and are not modifiable by any subsequent court order following the dissolution of marriage, except on express written acknowledged consent

9

of the parties. The parties further agree, however, that the payments under subparagraph 18(a) are to be considered maintenance for tax purposes.

Also, paragraph 24 of the agreement in pertinent part states:

Except as to provisions involving child custody, support, and visitation, this Agreement may not be modified by any subsequent court order following the dissolution of marriage, except on express written acknowledge[d] consent of the parties.

The District Court found that § 40-4-208(4), MCA, applies to maintenance payments and does not apply in this case because the agreement, in paragraph 18(b), specifically states that the maintenance payments "are in the nature of a property settlement" that cannot be modified without the couple's consent. Further, although the parties agreed that the payments would be considered maintenance for tax purposes, that compromise does not negate the clear language in 18(b) that the payments are part of the property settlement.

The District Court found that the language concerning termination of maintenance was not included in the final agreement, and that the final agreement controls.

We affirm the District Court's finding that the payments were a part of the property settlement to Janice that did not terminate upon her remarriage.

## ISSUE 3

Did the District Court err by failing to award Thomas his reasonable costs and attorney fees incurred in enforcing the court's prior order?

10

pay Thomas the realtor fee, and directed Thomas to pay Janice the unpaid property settlement payments that he owed her. Finding that under these circumstances neither party was totally successful, the District Court ordered that each party should pay its own attorney fees and costs. We affirm the District Court on this issue.

Affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

12

February 8, 1994

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:


DAVID N. HULL
Attorney at Law
P.O. Box 534
Helena, MT 59624

JACQUELINE T. LENMARK
Keller, Reynolds, Drake, Johnson & Gillespie, P.C.
38 S. Last Chance Gulch
Helena, MT 59601


ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
     Deputy