**APACHE SURVIVAL COALITION, an Arizona nonprofit corporation; Ola Cassadore Davis, an individual; Franklin Stanley, an individual; Vincent E. Randall, an individual; Wendsler Noise, Sr., an individual; Plaintiffs–Appellants,**

v.

**UNITED STATES of America; John McGee, in his official capacity as Supervisor, Coronado National Forest; Richard Kvale, in his official capacity as District Ranger, Safford District, Coronado National Forest; Defendants–Appellees,**

and

**Arizona Board of Regents, for and on behalf of the University of Arizona ("University"), a body corporate; Intervenor–Defendant–Appellee.**

No. 96–16471.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 15, 1997.

Decided July 1, 1997.

---

1. Lievsay's motion for leave to appeal from an interlocutory order is denied.

**664**

Michael V. Nixon, Portland, OR, for plaintiffs–appellants.

Eugene R. Bracamonte, Assistant United States Attorney, Tucson, AZ, and Mark R. Haag, United States Department of Justice, Environmental & Natural Resources Division, Washington, DC, for defendants–appellees.

David C. Todd, Patton, Boggs & Blow, Washington, DC, Thomas M. Thompson, University Attorney, University of Arizona, Tucson, AZ, and William Nicholas Poorten, III, Snell & Wilmer, Tucson, AZ, for defendant–intervenor–appellee.

Before: D. W. NELSON and FERNANDEZ, Circuit Judges, and MOLLOY,* District Judge.

MOLLOY, District Judge:

Appellant Apache Survival Coalition ("the Coalition") appeals the district court's denial of a preliminary injunction against further construction of the Mount Graham International observatory ("the Observatory"), a system of seven telescopes atop Mt. Graham in southeastern Arizona. The Coalition argues that the U.S. Forest Service failed to comply with the National Historic Preservation Act, 16 U.S.C. § 470 et seq. ("NHPA"). We affirm the dismissal of the request for preliminary injunctive relief.

## I. Background

This case is the latest in a series of challenges to the Observatory project. *See Mt. Graham Red Squirrel v. Yeutter,* 930 F.2d 703 (9th Cir.1991) ("*Red Squirrel I*"); *Mt. Graham Red Squirrel v. Madigan,* 954 F.2d 1441 (9th Cir.1992) ("*Red Squirrel II*"); *Mt. Graham Red Squirrel v. Espy,* 986 F.2d 1568 (9th Cir.1993) ("*Red Squirrel III*"); *Apache Survival Coalition v. United States,* 21 F.3d 895 (9th Cir.1994) ("*Apache Survival I*")[1]; *Mount Graham Coalition v. Thomas,* 53 F.3d 970 (9th Cir.1995) ("*Mt. Graham I*"); *Mt. Graham Coalition v. Thomas,* 89 F.3d 554 (9th Cir.1996) ("*Mt. Graham II*"). In *Apache Survival I,* the Coalition, an organization formed by members of the San Carlos Apache Tribe ("the Tribe"),[2] raised claims similar to those it raises here. *Apache Survival I* provides a helpful legal and factual history of the Observatory project. *See Apache Survival I,* 21 F.3d at 898–901.

The crux of the Coalition's argument in *Apache Survival I* was that the Forest Service violated the NHPA by failing to recognize that the entirety of Mt. Graham, not just the specific "shrines" the Service identified in its EIS, is sacred to practitioners of the traditional Western Apache religion. *Id.* at 913. We found this claim barred by laches. We declined to consider the Coalition's "newly discovered" evidence that the entire mountain is sacred, reasoning that the evidence was only "new" because the Coalition and Tribe had not presented it to the Forest Service during five years of NHPA review. *Id.* at 911–12. In a footnote, we noted the possibility that "one of the three telescopes planned for Emerald Peak might be relocated," but declined to consider this development. It was not considered because "the

---

* The Honorable Donald W. Molloy, United States District Judge for the District of Montana, sitting by designation.

1. *Apache Survival I* is sometimes referred to as "*Mt. Graham I,*" although it did not involve the red squirrel issue.

2. The Coalition consists of members of the Tribe who practice the traditional Western Apache religion.

Coalition does not contend that construction of the third telescopes [sic] will cause them a harm different from that already caused by construction of the first two." *Id.* at 913–14 n. 19.

As it turned out, the third telescope was in fact moved from its planned location. On December 6, 1993, only four days after sending the Coalition a request for comments, the Forest Service approved the University's request to relocate the Large Binocular Telescope ("LBT") to a site about 1300 feet from the one Congress had approved in the Arizona–Idaho Conservation Act, Pub.L. No. 100–696, 102 Stat. 4597 (1988) ("AICA").[3]

At sunrise on December 7, in what the Coalition perceived as a sneak attack, the University began clearing trees from the new LBT site. Later that day, the Coalition received the letter announcing the "pending" decision, and faxed the Service a response objecting to construction at the site without further NHPA compliance. Construction ceased for a time.

In May 1994, several environmental groups obtained a district court order enjoining further construction of the LBT, on the grounds that the new site was not authorized by AICA. We affirmed, holding that the new site did not fall within the narrow ESA exemption outlined in AICA. *Mt. Graham I,* 53 F.3d at 971. The Coalition did not take part in the *Mt. Graham I* suit.

On April 26, 1996, Congress intervened, in the form of the "Kolbe Rider" to the Omnibus Consolidated Rescissions and Appropriations Act of 1996, Pub.L. No. 104–134, 110 Stat. 1321. Section 335 of that act specifically approved the new site for the LBT. As a consequence, the district court dissolved the *Mt. Graham I* injunction on June 4, 1996.[4] On June 17, 1996, the Coalition filed this case and asked for a temporary restraining order ("TRO") enjoining construction.

The district court denied a TRO on the grounds of laches. The court emphasized that the Coalition did not come forward with its claim at the time the *Mt. Graham I* plaintiffs sought their injunction. Instead, the Coalition waited two years until that injunction was dissolved, to seek its own injunction on NHPA grounds. The Coalition's lack of diligence was, in Judge Browning's eyes, particularly inexcusable in light of the "strong wake-up call" of *Apache Survival I.* This appeal follows.

## II. Discussion

We review the denial of injunctive relief for an abuse of discretion or reliance on clearly erroneous findings of fact. *Does 1–5 v. Chandler,* 83 F.3d 1150, 1152 (9th Cir. 1996). Issues of law underlying the decision on a preliminary injunction are reviewed *de novo. Id.*

To establish the defense of laches, a party must show prejudice caused by the opposing party's lack of diligence in pursuing its claim. *Apache Survival I,* 21 F.3d at 905. Like NEPA cases, NHPA cases require that laches be "invoked sparingly." *Id.* at 905–06. We review a district court's application of laches for abuse of discretion or clear error. *Telink, Inc. v. United States,* 24 F.3d 42, 47 & n. 11 (9th Cir.1994).

The Coalition believes the district court was wrong to interpret its failure to join the *Mt. Graham I* litigation as a lack of diligence in protesting the LBT relocation. Instead, the Coalition argues, it chose to voice its concerns through an "administrative strategy" of lobbying the Forest Service. This tactical decision was arguably an alternative to the expensive and confrontational path of litigation.

If the Coalition did in fact pursue its claims through an "administrative strategy," little evidence of its toil appears in the rec-

3. In an effort to resolve the ESA controversy, section 7 of AICA designated three sites on Emerald Peak where construction of three telescopes was to begin immediately, without further ESA review.

4. We affirmed on June 17, 1996. *See Mt. Graham,* 89 F.3d at 555 (9th Cir.1996). The envi-

ronmental plaintiffs then filed a new suit, and moved for yet another preliminary injunction, which the district court denied on July 11, 1996. We affirmed on March 7, 1997. *Mt. Graham Coalition v. United States Forest Service,* 108 F.3d 1100 (9th Cir.1997).

ord. The record contains only sporadic correspondence suggesting the parties meet to discuss the Coalition's concerns. At oral argument, counsel for the Coalition stated that some meetings did take place, and showed signs of progress, but broke off when the *Mt. Graham I* injunction was lifted. Given the state of the record, we cannot say that the "administrative strategy" rose to the level of conduct which precludes a finding of unreasonable delay. *See Apache Survival I,* 21 F.3d at 909. Instead, the Coalition's tactical decisions appear markedly similar to the behavior which led to the decision in *Apache Survival I*—waiting to bring suit until the challenges launched by other parties have failed.[5] *Id.*

More to the point, the Coalition still has not explained how shifting the location of the LBT by 1300 feet will cause its members any new or different harm from that they would have suffered if the telescope had been built in its original location. The Coalition does not claim that the new site itself is of any particular religious or archeological significance. Instead, it simply restates its position that the entirety of Mt. Graham is sacred, and that the telescopes desecrate it. Even if the presence of three telescopes desecrates a sacred mountain, the Coalition points to no evidence to show that three telescopes in their present configuration represent a greater desecration than they would have in their original configuration.[6] In the absence of such evidence, we are at a loss to understand how the claims advanced in the present suit are any different from those we rejected in *Apache Survival I.*

In short, the doctrine of res judicata looms large in the future of this case, and casts a long shadow over the Coalition's prospects for success. We conclude that on the present record, the Coalition is not entitled to an injunction because it has not raised a serious question on the merits. *See Los Angeles Memorial Coliseum Comm'n v. National Football League,* 634 F.2d 1197, 1201 (9th Cir.1980). If there is no additional or different proof on remand, it is likely that the district court will find in favor of the government. Nonetheless, that is an issue involving a determination of proof presented to the district court on the request for permanent injunctive relief based on the merits of the claim.[7]

The ruling of the district court is AFFIRMED.

---

5. Indeed, the Coalition argues that it was justified in not bringing its claim earlier because, with the *Mt. Graham I* injunction in effect, "there was no real threat of further activity" until the injunction was dissolved. This argument is at odds with the purpose of the laches doctrine. Having failed to join the *Mt. Graham I* litigation, the Coalition had no right to rely on the continued existence of the injunction as an excuse not to bring its own claims. Any other view would encourage successive challenges, where one plaintiff awaits the outcome of another plaintiff's injunction before bringing its own claim. *See Apache Survival I,* 21 F.3d at 912 (discussing incentives to participate in agency consultation).

6. At oral argument, the Coalition's counsel suggested some possibilities. For example, it could be that rare sacramental plants are particularly abundant at the new LBT site. Perhaps such information will come to light at a later stage of this case. Given the present record, however, and the Coalition's lack of diligence in bringing its claim, the Coalition is not entitled to an injunction based on the mere possibility that further NHPA review will produce such information.

7. Nothing in this opinion should discourage the Coalition from continuing to seek the inclusion of Mt. Graham in the National Register of Historic Places. *See* 16 U.S.C. § 470a(d). We note that such a listing would alleviate many of the problems of outdated information and inadequate consultation that the Coalition claims occurred with respect to this undertaking.