**In re Thomas R. BEATY and Nancy Z. Beaty, Debtors,**

Thomas R. Beaty, Appellant,

v.

David Selinger, Appellee.

No. 01–56576.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 6, 2002.

Filed Sept. 26, 2002.

Thomas B. Gorrill, San Diego, CA, for debtors-appellants Thomas R. Beaty and Nancy Z. Beaty.

David Selinger, Oceanside, CA, in Pro Se, for the appellee.

Before FERNANDEZ, WARDLAW and W. FLETCHER, Circuit Judges.

Opinion by Judge WILLIAM A. FLETCHER; Concurrence by Judge FERNANDEZ.

## OPINION

WILLIAM A. FLETCHER, Circuit Judge.

We are presented in this case with a question of first impression: does the doctrine of laches apply to nondischargeability complaints brought under 11 U.S.C. § 523(a)(3)(B) and Federal Rule of Bankruptcy Procedure 4007(b)? When unscheduled creditor David Selinger sought a determination of the dischargeability of his state court default judgment against Chapter 7 debtor Thomas Beaty, the bankruptcy court granted summary judgment in Beaty's favor based on his affirmative defense of laches. On appeal, the bankruptcy appellate panel ("BAP") reversed on the ground that laches is never available as an affirmative defense in a § 523(a)(3)(B) action. For the reasons discussed below, we disagree with the BAP's holding that laches is never available. However, because Beaty is unable to establish the elements of a laches defense in this case, we hold that the BAP was correct in reversing the grant of summary judgment in his favor.

I

The relevant facts are not in dispute. In September 1991, Thomas and Nancy

Beaty filed a Chapter 7 bankruptcy petition. Nine months earlier, in January 1991, David Selinger had filed a complaint in a California state court against a real estate development company and Does 1–50, alleging, *inter alia,* fraudulent concealment with malice. At the time Selinger filed his action, he and the Beatys did not know each other. Unaware that they had any connection to Selinger or his lawsuit, the Beatys did not list Selinger as a creditor on their bankruptcy schedules. In January 1992, the bankruptcy court granted the Beatys a discharge.

In March 1992, Selinger substituted Thomas Beaty ("Beaty") for one of the unnamed Does in his state court action. On June 10, 1993, after Beaty had been served the summons, complaint and substitution order, and after Beaty had failed to appear and answer, the state court entered a default judgment against him. The judgment stated that Beaty's conduct in injuring Selinger had been "fraudulent, willful, malicious, and in conscious disregard" of Selinger's rights. The court awarded general damages and specified that punitive damages would be determined at a later date. On June 17, 1993, in response to a state court order that he appear at a judgment debtor's examination, Beaty filed a "Notice of Injunction Against Further Proceedings," to which he attached a copy of his bankruptcy discharge. The Notice stated that "[t]he effect of this Discharge of Debtor is equivalent to an automatic injunction against creditors from commencing or continuing any lawsuit [or] enforcement of any judg-

ment." Nothing further occurred in the state court action.

One year later, on August 29, 1994, Selinger filed a pro se adversary proceeding seeking to revoke the Beatys' discharge under 11 U.S.C. § 727. In June 1995, the bankruptcy court granted summary judgment to the Beatys in that action. It later denied Selinger's motion for reconsideration. The district court affirmed the bankruptcy court's dismissal in April 1997.

In April 1998, just over six years after the Beatys' discharge was issued and just shy of five years after Beaty filed the state-court Notice that informed Selinger of Beaty's discharged status, Selinger, again acting pro se, filed a second bankruptcy complaint against Beaty. This complaint, the subject of the present appeal, alleged that the default judgment was nondischargeable under 11 U.S.C. § 523(a)(2), (4) and (6). The complaint noted that Selinger was not listed as a creditor in Beaty's petition, received no notice that the case would be closed, and had no knowledge of the case until after the discharge, and therefore could not have made a timely filing of proof of claim or request for determination of dischargeability. In his briefing to us, and to the courts below, Selinger suggested that he filed this second complaint when he did because a month earlier, the United States Supreme Court, in *Cohen v. de la Cruz,* 523 U.S. 213, 118 S.Ct. 1212, 140 L.Ed.2d 341 (1998), had held that punitive damages are not dischargeable in bankruptcy. His complaint sought a declaration that the default judgment debt was nondischargeable under § 523(a)(3)(B); [1] a modification

---

1. Section 523(a)(3)(B) provides that

> [a] discharge under section 727 ... of this title does not discharge an individual debtor from any debt—
> neither listed nor scheduled under section 521(1) of this title, with the name, if known

to the debtor, of the creditor to whom such debt is owed, in time to permit—
if such debt is of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim and timely request for a determination of dischargeability of such debt under one of such para-

of the discharge order to allow continued prosecution of the state court action for a determination of punitive damages; and a ruling that any future award of punitive damages would be nondischargeable.

In September 1998, the bankruptcy court granted a motion by Beaty to dismiss Selinger's § 523(a)(3)(B) complaint on a ground not relevant here. In March 2000, the BAP reversed and remanded. On remand, Beaty answered the complaint. The answer (1) admitted that Selinger was an unscheduled creditor who had no knowledge of the bankruptcy proceeding in time to file a timely nondischargeability complaint, and (2) asserted laches as an affirmative defense. Beaty argued that Selinger had formal notice of the discharge no later than June 1993 and that his delay in bringing the nondischargeability action was unreasonable and prejudicial. He noted that Selinger had lost an earlier action objecting to the Beatys' discharge and that the present § 523(a)(3)(B) action was brought only after Selinger learned of a change in the law that might benefit him.

Beaty moved for summary judgment based on laches. Selinger moved for summary judgment based on issue preclusion and moved to strike portions of Beaty's answer, including the portion containing his laches defense. The bankruptcy court granted Beaty's motion, denied Selinger's motions, and dismissed Selinger's complaint with prejudice. The court noted that "laches has long been recognized as a means to protect a party from unreasonable, prejudicial delay" and is "an equitable defense available when properly pled." It held that Selinger was "guilty of laches by failing to bring a Section 523 nondischargeability complaint for over five years

after first learning [Beaty] had filed bankruptcy." It stated:

Here, Mr. Selinger's delay is inexcusable and was done for tactical reasons. The Plaintiff expressed an intent to await a change in the law with regard to dischargeability of punitive damages and to see what would happen with this 727 action in which he objected to Mr. Beaty's discharge. Prejudice to the Defendant is obvious based upon these facts, and the Court rules that the Debtor is entitled to a fresh start at this late date, having received his discharge in 1992.

Selinger appealed to the BAP, which reversed in part and remanded in a published opinion. *In re Beaty,* 268 B.R. 839 (9th Cir.BAP2001). The majority of the panel held that the equitable doctrine of laches is never a valid defense in a § 523(a)(3)(B) adversary proceeding to except from discharge a debt that the debtor failed to schedule in time to permit the timely filing of a nondischargeability complaint. The panel majority emphasized that Federal Rule of Bankruptcy Procedure 4007(b) provides that a § 523(a)(3)(B) complaint may be filed "at any time." It wrote that, "[w]hile we may agree that Selinger's failure to act more promptly is questionable, we are not at liberty to rewrite the plain language of the Code or the Rules.... A laches defense to the filing of a § 523(a)(3)(B) complaint is in conflict with Rule 4007(b) and therefore is inappropriate." *Id.* at 846. The majority reasoned that, because a debtor is also allowed to bring an action to determine the dischargeability of a debt himself, *see* Fed. R. Bankr.P. 4007(a), debtors like Beaty need not wait for creditors to bring such actions, and are therefore able to avert any preju-

graphs, unless such creditor had notice or actual knowledge of the case in time for

such timely filing and request.

dicial delay. *See In re Beaty,* 268 B.R. at 846.

One BAP panel member concurred in the result, but wrote separately to object to the majority's conclusion that laches could never apply to a § 523(a)(3)(B) action. In his view, "there is a potential role for the laches defense" in such actions, and "[t]he majority's attempt to use the instant appeal, in which laches was incorrectly applied, as the occasion to banish laches from § 523(a)(3)(B) risks throwing out the baby with the bath water." *Id.* at 849 (Klein, J., concurring). This panel member would have held that laches is available in such actions as a general matter, but would have found that the Bankruptcy Court abused its discretion in finding laches in this case because (1) Selinger was diligent, (2) Beaty was not prejudiced by being unfairly deprived of the ability to defend this particular § 523(a)(3)(B) action, and (3) any arguable prejudice was the self-inflicted result of Beaty's attempt to "bamboozle" Selinger by erroneously stating in the Notice of Injunction that the discharge barred enforcement of any judgment. *Id.* at 850.

Beaty timely appealed the judgment of the BAP.

## II

■ We review de novo cases appealed from the Bankruptcy Appellate Panel. *In re Scovis,* 249 F.3d 975, 980 (9th Cir. 2001). " 'Because we are in as good a position as the BAP to review bankruptcy court rulings, we independently examine the bankruptcy court's decision, reviewing the bankruptcy court's interpretation of the Bankruptcy Code de novo and its factual findings for clear error.' " *In re Taggart,* 249 F.3d 987, 990 (9th Cir.2001) (quoting *United States v. Hatton (In re Hatton),* 220 F.3d 1057, 1059 (9th Cir. 2000)). Whether laches is available as a

potential defense to a particular kind of action is a question of law reviewed de novo. *Wyler Summit P'ship v. Turner Broad. Sys.,* 235 F.3d 1184, 1193 (9th Cir. 2000).

■ Where laches is available as a potential defense, our case law has been less than clear as to the appropriate standard of review of a lower court's decision that laches applies in a particular case. A number of opinions have acknowledged the confusion on the issue but have not resolved it. *See, e.g., Jarrow Formulas, Inc. v. Nutrition Now, Inc.,* 304 F.3d 829, 834 (9th Cir.2002) (holding that "the district court's application of the laches factors is entitled to deference, not to be reviewed de novo," but declining to resolve conflict as to whether the abuse of discretion or clear error standard applies); *Danjaq, LLC v. Sony Corp.,* 263 F.3d 942, 952 (9th Cir.2001) (declining to address question of proper standard and concluding result would be the same under either clear error or abuse of discretion review); *Apache Survival Coalition v. United States,* 118 F.3d 663, 665 (9th Cir.1997) ("We review a district court's application of laches for abuse of discretion or clear error."); *Tel-ink, Inc. v. United States,* 24 F.3d 42, 47 n. 11 (9th Cir.1994) (holding that review is for abuse of discretion and noting that, while prior panels had used the "clearly erroneous" standard, "[f]or purposes of this appeal, any distinction that may exist between the two standards is immaterial"); *Jackson v. Axton,* 25 F.3d 884, 888 (9th Cir.1994) (noting "[t]his court has reviewed a grant of summary judgment on grounds of laches both de novo and for abuse of discretion" and declining to resolve the conflict because "[w]e would affirm the district court regardless of the standard"), *rev'd on other grounds by Fogerty v. Fan-*

*tasy, Inc.,* 510 U.S. 517, 531–32, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994).

We here clarify that the appropriate standard of review of a determination of whether laches applies in a particular case is abuse of discretion. This standard, which comports with the equitable nature of the laches doctrine, has been suggested by the Supreme Court and is used by our sister circuits. *See, e.g., Burnett v. New York Cent. R. Co.,* 380 U.S. 424, 435, 85 S.Ct. 1050, 13 L.Ed.2d 941 (1965) ("Whether laches bars an action in a given case depends upon the circumstances of that case and is a question primarily addressed to the discretion of the trial court." (internal quotations omitted)); *Brown–Mitchell v. Kansas City Power & Light Co.,* 267 F.3d 825, 827 (8th Cir.2001) ("The determination of whether laches applies in the present case was a matter within the sound discretion of the district court, and we, accordingly, review the district court's application of laches for an abuse of discretion."); *City of Wyandotte v. Consol. Rail Corp.,* 262 F.3d 581, 589 (6th Cir.2001); *Sanders v. Dooly County,* 245 F.3d 1289, 1291 (11th Cir.2001); *Holmes v. Pension Plan of Bethlehem Steel Corp.,* 213 F.3d 124, 134 (3d Cir.2000) ("As an equitable doctrine, the decision to apply laches is left to the sound discretion of the District Court. Consequently, appellate review of a lower court's application of the doctrine is limited to a review for abuse of discretion." (internal quotations and citations omitted)).

■ In cases like this one, where summary judgment has been granted on the basis of laches, "we review certain aspects of the district court's decision," such as "whether the district court inappropriately resolved any disputed material facts in reaching its decision," under the de novo standard that traditionally governs summary judgment review. *Jarrow Formu-*

*las,* 304 F.3d at 833–34. But our review of the application of the laches doctrine to the facts is for abuse of discretion. *Id.; see also Hot Wax, Inc. v. Turtle Wax, Inc.,* 191 F.3d 813, 819 (7th Cir.1999) ("The traditional standard of review in summary judgment cases must be considered in light of the notion that a district court enjoys considerable discretion in determining whether to apply the doctrine of laches to claims pending before it. . . . Therefore, while our review of the record is de novo in determining whether there are any disputed issues of material fact, our review of whether the district court properly applied the doctrine of laches is under an abuse of discretion standard." (internal quotations and citations omitted)); *see also Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio,* 40 F.3d 698, 707 (5th Cir.1994) ("[A]s long as the district court applies the correct legal standard on summary judgment and does not resolve disputed issues of material fact against the nonmovant, its determination of whether the undisputed facts warrant an application of laches is reviewed for abuse of discretion.").

### III

■ The initial question is whether laches is available as an affirmative defense at all in § 523(a)(3)(B) cases. This is a question of law. Section 523(a)(3)(B) provides for the exception from discharge of certain debts—most notably, for purposes of this case, debts involving fraud on the part of the debtor—when those debts were not listed by the debtor in the schedule of creditors. The Bankruptcy Code and Rules treat these debts differently from debts of the same sort that have been properly scheduled. Specifically, § 523(a)(3)(B) creates a nondischargeability action for defrauded creditors who were

neither listed nor scheduled and had no notice or actual knowledge of the case in time to permit the timely filing of a proof of claim or a timely request for a determination of dischargeability. Section 523(c)(1), which provides for the possible exception from discharge of the same kinds of debts in cases of creditors who *did* receive timely notice,[2] is subject to a time limit under Rule 4007(c). That Rule provides that a creditor has 60 days from the first date set for the creditors' meeting in which to file the nondischargeability complaint. By contrast, Rule 4007(b), which governs the timing of the commencement of § 523(a)(3)(B) complaints by unscheduled creditors, reads: "A complaint other than under § 523(c) may be filed at any time."

The question before us is whether § 523(a)(3)(B), as implemented by Rule 4007(b), allows the equitable doctrine of laches as a defense. Our analysis begins with a recognition of two fundamental tenets of bankruptcy law. The first is the "long[-]recognized" principle that "a chief purpose of the bankruptcy laws is 'to secure a prompt and effectual administration and settlement of the estate of all bankrupts within a limited period[.]'" *Katchen v. Landy*, 382 U.S. 323, 328, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966) (citation omitted). The second is the understanding that a bankruptcy court is a court of equity and should invoke equitable principles and doctrines, refusing to do so only where their application would be "inconsistent" with the Bankruptcy Code. *In re Myrvang*, 232 F.3d 1116, 1124 (9th Cir.2000) (citing *SEC v. United States Realty &*

*Improvement Co.*, 310 U.S. 434, 455, 60 S.Ct. 1044, 84 L.Ed. 1293 (1940)); *see also Katchen*, 382 U.S. at 327, 86 S.Ct. 467 (noting bankruptcy courts "are essentially courts of equity"). These two principles combine to create a presumption that the equitable doctrine of laches, which has as its goal the prevention of prejudicial delay in the bringing of a proceeding, is a relevant and necessary doctrine in the bankruptcy context.

The BAP held that the "at any time" language of Rule 4007(b) overcomes that presumption and removes any equitable limitation on the commencement of a § 523(a)(3)(B) action. That holding has some support. For example, the Patent and Trademark Office has consistently held that Section 14 of the Lanham Act, which provides that a cancellation action premised on genericism, abandonment or fraudulent procurement may be brought "at any time," precludes a laches defense to such actions. *See Marshak v. Treadwell*, 240 F.3d 184, 193 n. 2 (3d Cir.2001) (citing cases so holding). Before Congress imposed a statute of limitations on the time for bringing a habeas corpus action, it was understood that the statute providing that a motion to vacate a sentence "may be made at any time" rendered the doctrine of laches inapplicable. *See Heflin v. United States*, 358 U.S. 415, 420, 79 S.Ct. 451, 3 L.Ed.2d 407 (1959) (Stewart, J., concurring). A few other cases have similarly interpreted "at any time" language in other statutes. *See, e.g., Sooner Fed. Sav. & Loan Ass'n v. Smoot*, 894 P.2d 1082, 1090 (Okla.1995); *In re Marriage of Leslie*, 112 Wash.2d 612, 772 P.2d 1013, 1017 (1989).

**2.** Section 523(c)(1) reads:

Except as provided in subsection (a)(3)(B) of this section, the debtor shall be discharged from a debt of a kind specified in paragraph (2), (4), (6) or (15) of subsection (a) of this section, unless, on request of the creditor to whom such debt is owed, and after notice and a hearing, the court determines such debt to be excepted from discharge under paragraph (2), (4), (6), or (15), as the case may be, of subsection (a) of this section.

However, the few cases directly reaching this conclusion do so with virtually no analysis as to why such language would eliminate the application of the equitable doctrine, instead simply assuming that the absence of a time limitation also results in the absence of a laches limitation. *See Sooner*, 894 P.2d at 1090; *Leslie*, 772 P.2d at 1017. Further, the "at any time" language in all of these cases is contained in a statute, rather than in a procedural rule implementing a statute.

The BAP majority relied heavily on Judge O'Scannlain's concurrence in *In re Beezley*, 994 F.2d 1433 (9th Cir.1993), but that concurrence did not address the question of the applicability of laches to a § 523(a)(3)(B) action. Rather, it addressed the question of whether a debtor should have to show his good faith in omitting a particular debt from a bankruptcy schedule before the discharge of an omitted debt could be recognized in a § 523(a)(3) action. *See id.* at 1439–40 (O'Scannlain, J., concurring). Requiring such a showing "interposes an equitable barrier between the debtor and his discharge that Congress simply did not enact in the Bankruptcy Code," and "[c]ourts are not free to condition the relief Congress has made available in the Bankruptcy Code on factors Congress has deliberately excluded from consideration." *Id.* at 1439. But Judge O'Scannlain's concurrence never purported to speak broadly about the applicability of equitable doctrines to § 523(a)(3)(B) cases. Indeed, he cited very specific legislative history expressly disapproving the equitable notion of debtor good faith. *Id.* at 1439 n. 4.

*In re Lyman*, 166 B.R. 333 (Bankr. S.D.Ill.1994), the one bankruptcy opinion that the BAP considered to have"dealt squarely" with the issue of the applicability of laches in § 523(a)(3)(B) actions, gave no hint as to why the "at any time" language in Rule 4007(b) should eliminate the laches defense in those actions. The district court in that case provided only the conclusory statement that "a debtor who fails to list a creditor loses the jurisdictional and time limit protections of Section 523(c) and Rule 4007[ (c) ]," and "*[t]herefore*, debtor's argument that the complaint should be dismissed pursuant to laches ... is without merit." *Id.* at 337 (emphasis added). In *In re Santiago*, 175 B.R. 48, 51–52 (9th Cir.BAP1994), also cited by the BAP in this case, the court addressed only the statutory time limitation applicable to § 523(a)(3)(B) actions, expressly declining to render any opinion as to whether laches might impose a time limit in these cases. *Id.* at 51 n. 4.

For a number of reasons, we hold that laches is available as a defense in a § 523(a)(3)(B) action. First, an examination of other bankruptcy actions that are without time limitations reveals that Congress nevertheless intended laches to act as a constraint in those actions. For example, a Chapter 7 debtor may move to reopen his case and bring a lien avoidance action at any time, and creditors are protected by a laches concept from having to face actions by debtors who prejudicially delay bringing such actions.[3] Further, in

---

3. *See, e.g., In re Chabot*, 992 F.2d 891, 893 (9th Cir.1993) ("Absent a prejudicial delay, an avoidance action may be brought at any time."), *rev'd on other grounds by* Bankruptcy Reform Act of 1994, Pub. Law No. 103–394 § 303 (1994); *In re Bianucci*, 4 F.3d 526, 528 (7th Cir.1993) (noting that the lien avoidance provision sets no time limits on debtors' mo-

tions to avoid liens, but the "leading approach ... incorporates an equitable defense akin to laches, so that a debtor may reopen the bankruptcy case at any time to avoid a lien absent a finding of prejudice to the creditor"); *In re Levy*, 256 B.R. 563, 566 (D.N.J.2000) (noting the absence of a statutory time limitation for the bringing of avoidance actions, but apply-

both the Chapter 13 and the Chapter 11 bankruptcy contexts, courts have recognized that, while the failure to give a creditor notice of the bar date precludes the court from denying the creditor's claim for failing to file it before that date, laches may nonetheless bar such a claim if there is unreasonable, prejudicial delay.[4] Though none of these examples provides a perfect parallel to § 523(a)(3)(B) complaints, the application of laches in these contexts demonstrates that bankruptcy actions that may be brought "at any time" are not per se excluded from application of laches.

■ Second, the "at any time" language is not found in § 523(a)(3)(B) of the Code itself. Rather, it is found in Bankruptcy Rule 4007(b), which was adopted pursuant to the Rules Enabling Act. Like a Federal Rule of Civil Procedure, "a Bankruptcy Rule cannot create an exception to the Bankruptcy Code," and it cannot " 'abridge, enlarge, or modify any substantive right.' " *In re Jastrem*, 253 F.3d 438, 441 (9th Cir.2001) (quoting 28 U.S.C. §§ 2072(b) and 2075). We should therefore be extremely reluctant to find in Rule 4007(b) the abolition of the doctrine of laches if § 523(a)(3)(B) otherwise would allow it. Consistent with the limitation imposed by the Rules Enabling Act, other Bankruptcy Rules have been read to allow

laches, even when those rules provide no time limitation. For example, Rule 5010 regarding motions to reopen bankruptcy cases does not require that a motion be filed within a certain time period (and Rule 9024 provides that the one-year limitation of Rule 60(b) of the Federal Rules of Civil Procedure does not apply to these motions). But courts have recognized that the motion "must be filed within a reasonable time ... [and that] laches may apply to a motion to reopen." 3 Lawrence P. King, *Collier on Bankruptcy* ¶ 5010.02[6] at 5010–6 (15th ed.1994); *id.* at ¶ 350.03[6] (citing legislative history referencing intent for laches to apply).

■ Third, laches is not a doctrine concerned solely with timing. Rather, it is primarily concerned with prejudice. There is thus nothing inherently contradictory about saying that an action that may be brought "at any time" is nonetheless subject to an equitable limitation based on prejudicial delay. *See Couveau v. Am. Airlines*, 218 F.3d 1078, 1083 (9th Cir. 2000) ("To establish laches a defendant must prove both an unreasonable delay by the plaintiff and prejudice to itself."); *Apache Survival Coalition*, 118 F.3d at 665 ("To establish the defense of laches, a party must show prejudice caused by the opposing party's lack of diligence in pursuing its claim."). This fact is implicitly

---

ing the "recognized limitation" of laches to bar a prejudicially delayed filing).

**4.** *See In re The Drexel Burnham Lambert Group*, 157 B.R. 532, 538 (S.D.N.Y.1993) (allowing court to use doctrine of laches in a Chapter 11 case and noting "the distinction between a creditor's rights to notice under the bankruptcy law and debtor's rights to resist dilatory claims under the equitable doctrine of laches"); *In re Hunt*, 146 B.R. 178, 184 (Bankr.N.D.Tex.1992) ("[A Chapter 11] creditor's claim can be barred for failure to file a proof of claim prior to the bar date only if the creditor received reasonable notice of the bar

date. It is undisputed that Plaintiffs did not receive notice of the bar date.... However, that does not end the Court's inquiry, for a creditor cannot wait indefinitely to file a claim. This Court may apply the equitable doctrine of laches to prevent the late filing of a proof of claim if Plaintiff's delay was unreasonable." (citations omitted)); *In re Barsky*, 85 B.R. 550, 554 (C.D.Cal.1988), *aff'd*, 933 F.2d 1013 (9th Cir.1991) (holding that, in a Chapter 13 case, failure to provide notice "does not preclude a court from limiting the creditor's right to file a claim pursuant to the independent doctrine of laches").

recognized in the doctrine that a claim may be barred by laches even if the statute of limitations for the claim has not expired. *See Jackson,* 25 F.3d at 887 (noting "[s]tatutes of limitations bar claims only upon the passage of time; laches bars claims because prejudice would otherwise result to the defendant"); *see also Wells v. United States Steel & Carnegie Pension Fund, Inc.,* 950 F.2d 1244, 1250 (6th Cir. 1991) (noting laches may ripen within a time that is short of the applicable period of limitations); *Maksym v. Loesch,* 937 F.2d 1237, 1248 (7th Cir.1991) (noting that, because laches focuses on harm caused by delay, "the fact that [a plaintiff] sued [a defendant] within the statutory period does not defeat the defense of laches"). Analogizing to this rule of law, the fact that a creditor has time remaining on his statutory clock (indeed, an infinite amount of time, if the clock is set at "at any time") says nothing about whether his right to bring his action might be limited by laches. In the words of the concurring member of the BAP panel in this case, "the authorization in Rule 4007(b) for filing such an action 'at any time' does not … forbid a court from applying laches in appropriate circumstances; in other words, the phrase 'at any time' does not mean 'at any time no matter what and no matter how inequitable.'" *In re Beaty,* 268 B.R. at 849 (Klein, J., concurring).

Fourth, it is not hard to imagine a case in which the absence of a laches defense would lead to injustice. It seems highly unlikely that Congress intended that a debtor who innocently neglected to schedule a creditor be vulnerable to an ostensible creditor who learned of the bankruptcy case soon after discharge but waited many years for a key witness to die before bringing his § 523(a)(3)(B) action. While it is true, as the BAP majority noted, that the debtor could avoid such a surprise by seeking a declaration as to the debt's dis-

chargeability himself, in some cases (such as the one just described) the debtor would not know to do so. Further, it is nearly always the case that a defendant who invokes laches could have brought an earlier declaratory judgment action against the late-litigating plaintiff, *see* 28 U.S.C. § 2201, but common sense and a concern for judicial economy prevent this from acting as a bar to a laches defense in other contexts. We see no reason why laches should not be available in bankruptcy when it is available elsewhere.

We note that the question of the application of laches to § 523(a)(3)(B) actions would be unusual, in that the "at any time" language of Rule 4007(b) comes into play only in the specific case of a debtor's failure to schedule a creditor. As all of the creditors seeking to bring such actions have, by definition, already been disadvantaged by the debtor's failure to schedule them, they might argue that the bankruptcy policy of promptness is forfeited by virtue of the debtor omission, and that laches should be per se unavailable to such a debtor. However, because, as discussed above, laches addresses more than timing, this aspect of § 523(a)(3)(B) actions does not necessarily render an application of laches "inconsistent" with the Bankruptcy Code. *In re Myrvang,* 232 F.3d at 1124. At most, it might warrant more careful consideration of *how* (rather than *whether*) laches is applied.

That is, a concern that the debtor might himself have behaved inequitably is best addressed, not by declaring laches unavailable in all § 523(a)(3)(B) cases, but rather by emphasizing the equitable nature of the doctrine in its application in particular cases. "[I]t is hornbook law that one seeking equity must do equity," and that debtors who have "unclean hands" may not invoke laches. *White v. Boston,* 104 B.R. 951, 957 (S.D.Ind.1989). One could say

that every debtor who failed to schedule a creditor had thereby behaved inequitably; if that were so, it might rightly be said that laches should be uniformly unavailable to debtors in § 523(a)(3)(B) actions. But debtors also omit creditors innocently, inadvertently and in good faith. Indeed, by all indications, that is what occurred here, for, as recounted above, Thomas Beaty was still an unnamed Doe when the Beatys' discharge was granted.

On balance, we believe that the best reading of § 523(a)(3)(B) and Rule 4007(b) is that laches is available as a defense. At the same time, we read those provisions as directing bankruptcy courts to be especially solicitous to § 523(a)(3)(B) claimants when laches is invoked, and to refuse to bar an action without a particularized showing of demonstrable prejudicial delay. Just as there is a strong presumption that a delay is reasonable for purposes of laches when a specified statutory limitations period has not yet lapsed, there should be a similar presumption in § 523(a)(3)(B) cases. A party asserting laches as a defense to a complaint filed under § 523(a)(3)(B) must make a heightened showing of extraordinary circumstances and set forth a compelling reason why the action should be barred. *See Jarrow Formulas*, 304 F.3d at 835 ("If the plaintiff filed suit within the analogous limitations period, the strong presumption is that laches is inapplicable."); *Shouse v. Pierce County*, 559 F.2d 1142, 1147 (9th Cir.1977) ("It is extremely rare for laches to be effectively invoked when a plaintiff has filed his action before limitations in an analogous action at law has run."); *see also Patton v. Bearden*, 8 F.3d 343, 348 (6th Cir.1993) (noting the "strong presumption that laches will not apply when the analogous statute of limitations has not run, absent compelling reason," and requiring a showing of "gross laches in the

prosecution of the claim" (internal citation and quotation omitted)); *Reconstr. Fin. Corp. v. Harrisons & Crosfield*, 204 F.2d 366, 370 (2d Cir.1953) (noting that "a heavy burden rests on ... the party setting up laches as a defense" when the limitations period has not yet expired); *In re Marriage of Hahn & Cladouhos*, 263 Mont. 315, 868 P.2d 599, 601 (1994) ("When a claim is filed within the time limit set by the analogous statute, the defendant bears the burden to show that extraordinary circumstances exist which require the application of laches"); *Bldg. & Constr. Trades Council of N. Nev. v. State ex rel. Pub. Works Bd.*, 108 Nev. 605, 836 P.2d 633, 637 (1992) ("Especially strong circumstances must exist ... to sustain a defense of laches when the statute of limitations has not run."); *Williams v. Mertz*, 549 So.2d 87, 88 (Ala.1989) (when limitations period has not expired, "[s]pecial facts must appear which make the delay culpable") (internal citation and quotation omitted).

## IV

The next question is whether Beaty can show laches on the facts of this case. *See Brown v. Cont'l Can Co.*, 765 F.2d 810, 814 (9th Cir.1985) ("Laches is an equitable doctrine. Its application depends upon the facts of the particular case."). The bankruptcy court held that the elements of laches were met. We hold that it erred as a matter of law.

The affirmative defense of laches " 'requires proof of (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense.' " *Kansas v. Colorado*, 514 U.S. 673, 687, 115 S.Ct. 1733, 131 L.Ed.2d 759 (1995) (quoting *Costello v. United States*, 365 U.S. 265, 282, 81 S.Ct. 534, 5 L.Ed.2d 551 (1961) and citing Black's Law Dictionary 875 (6th ed. 1990) (" 'Doctrine of laches' is based upon maxim

that equity aids the vigilant and not those who slumber on their rights. It is defined as neglect to assert a right or claim which, taken together with lapse of time and other circumstances causing prejudice to the adverse party, operates as a bar in court of equity.")). *See also United States v. Marolf,* 173 F.3d 1213, 1218 (9th Cir.1999). Neither lack of diligence nor prejudice is shown on the record here.

1. Lack of Diligence/Unreasonable Delay

▮▮▮▮ The first element of laches requires an examination both of the length of the delay between Selinger's becoming aware of the bankruptcy discharge and his filing of the nondischargeability action, and of the circumstances surrounding that delay, including Selinger's behavior during the interim period. The bankruptcy court's finding of a lack of diligence and an unreasonable delay rested largely on the fact that Selinger knew for five years that he had a potential § 523(a)(3)(B) action, and that he affirmatively opted not to file that action until the law on dischargeability changed in his favor. Even assuming that this was the motivation behind Selinger's delay, the bankruptcy court's conclusion was legally erroneous. Delay for the purpose of awaiting a change of previously unfavorable law is reasonable delay for purposes of laches, and does not constitute a lack of diligence. *See, e.g., Wauchope v. United States Dep't of State,* 985 F.2d 1407, 1411 (9th Cir.1993) (laches not a bar for plaintiff who did not seek United States citizenship until law changed in her favor); *Travelers Ins. Co. v. Cuomo,* 14 F.3d 708, 714 (2d Cir.1993), *reversed on other grounds,* 514 U.S. 645, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995) (no laches because prior unfavorable court decisions constitute a legitimate reason for delaying until recent United States Supreme Court cases improved prospects for success); *Dickinson v. Ind. State Election Bd.,* 933 F.2d 497, 502 (7th Cir.1991) (no laches where plaintiffs delayed challenging the apportionment of two voting districts until statutory amendment made it easier to show impermissible vote dilution).

We are also unconvinced that a lack of diligence on Selinger's part is demonstrated by the fact that before Selinger became aware of his potential § 523(a)(3)(B) cause of action he pursued separate, unsuccessful litigation under § 727. There is no argument that the judgment in the § 727 action is preclusive under the doctrines of either res judicata (claim preclusion) or collateral estoppel (issue preclusion). Nor is there any argument that Beaty was unfairly surprised in the present § 523(a)(3)(B) action as a result of the § 727 action. Indeed, if there is any unfairness, it is the result of what the concurring member of the BAP panel called the "bamboozl[ing]" of Selinger by Beaty in that action.

▮▮▮▮ "The Supreme Court has repeatedly emphasized '(t)hat no arbitrary or fixed period of time has been, or will be, established as an inflexible rule, but that the delay which will defeat such a suit must in every case depend on the peculiar equitable circumstances of that case.'" *Goodman v. McDonnell Douglas,* 606 F.2d 800, 805–06 (8th Cir.1979) (quoting *The Key City,* 81 U.S. (14 Wall.) 653, 660, 20 L.Ed. 896 (1871)). Beaty has provided no particularized evidence to support his assertion that the time lag between knowledge of the potential action and the filing of the action was unreasonable in length. Mere delay alone will not establish laches, *see Am. Int'l Group, Inc. v. Am. Int'l Bank,* 926 F.2d 829, 833 (9th Cir.1991), and the record does not demonstrate a lack of diligence or unreasonable delay on Selinger's part.

2. Prejudice

Beaty has also failed to make a particularized showing of prejudice arising from

Selinger's delay in bringing his § 523(a)(3)(B) action. The bankruptcy court assumed prejudice based solely on the fact that the first element, Selinger's delay, was tactical in nature. As discussed above, tactical delays while awaiting favorable changes in the law are excused for purposes of laches, and thus the court's prejudice analysis also fails.

Beaty's brief to us makes a handful of additional, but conclusory, claims of prejudice. He contends that he was "deprived of the finality of his discharge," that he faces attorney's fees that he otherwise might not have faced, and that there might be some (unspecified) witnesses and/or documentary evidence that will be unavailable because of the passage of time. At oral argument, Beaty was unable to provide any more specific support for his contention that the delay was prejudicial. Such generic claims of prejudice do not suffice for a laches defense in any case, and are particularly insufficient in a case in which a heightened showing of extraordinary circumstances and demonstrable prejudice is required. *See, e.g., United States v. Admin. Enter., Inc.*, 46 F.3d 670, 673 (7th Cir.1995) (finding no prejudicial delay where alleged harm was "entirely hypothetical"); *Meyers v. Asics Corp.*, 974 F.2d 1304, 1308 (Fed.Cir.1992) ("Defendants also argue that they suffered evidentiary prejudice—loss of key witnesses and loss of documentary evidence. However, none of the defendants state exactly what particular prejudice it suffered from the absence of these witnesses or evidence. Conclusory statements that there are missing witnesses, that witnesses' memories have lessened, and that there is missing documentary evidence, are not sufficient."); *State ex rel. Casale v. McLean*, 58 Ohio St.3d 163, 569 N.E.2d 475, 478 (1991) (refusing to find laches where litigant offered only "a bare assertion that certain

factors 'have changed dramatically'" and "a review of the record shed[ ] little meaningful light on the precise nature of these alleged changes").

### 3. No Laches on the Facts of This Case

"Because the application of laches depends on a close evaluation of all the particular facts in a case, it is seldom susceptible of resolution by summary judgment." *Couveau*, 218 F.3d at 1083. However, where a party has based his argument of prejudice almost entirely on a contention that is without legal support, and has not, despite ample opportunity, adduced any specific evidence of harm due to unavailability of evidence or the like, remand for further factual development would be futile. We therefore affirm the decision of the BAP that Selinger's § 523(a)(3)(B) action should be allowed to proceed. While we disagree with the BAP's reasoning, we affirm its conclusion that laches does not bar Selinger's action.

### Conclusion

We hold that laches is available as a defense to an action filed under 11 U.S.C. § 523(a)(3)(B). In order to establish a successful laches defense, a defendant must show extraordinary circumstances and set forth a compelling reason why the action should be barred. Because the elements of the defense are not satisfied in this particular case, the BAP correctly reversed the bankruptcy court's grant of summary judgment in Beaty's favor.

AFFIRMED.

FERNANDEZ, Circuit Judge, concurring:

I concur in the result because I agree that laches does not bar Selinger's complaint to determine the dischargeability of his judgment against Beaty for fraudulent,

willful, and malicious conduct which injured Selinger.

If laches were an available defense, it is not shown here, as is demonstrated in part IV of the majority opinion. Where I differ from the majority is that I do not think that laches is ever available in an action of this type. I will adumbrate my reasons, which can be stated rather succinctly.

In this case, Beaty failed to list Selinger as a creditor on his bankruptcy schedules, and Selinger did not have knowledge of the case soon enough to file a timely proof of claim and a request for a determination of dischargeability. Moreover, Selinger's debt allegedly falls within the exceptions to discharge set forth in 11 U.S.C. § 523(a)(2), (4) or (6). Therefore, under 11 U.S.C. § 523(a)(3)(B) the discharge of Beaty under 11 U.S.C. § 727 did not discharge Selinger's debt, and under the bankruptcy rules Selinger's complaint could "be filed at any time." Fed. R. Bankr.P. 4007(b). In my view, "at any time" means just that.

I recognize, of course, that federal courts do prefer to leave themselves flexibility, and that they are loath to hold that laches does not apply at all. They imagine, nay envision, a whole host of possibilities wherein someone should be protected against dilatory and prejudicial filings. In general, that is unexceptional, and when nothing in particular stands in its way, it is probably even laudable. But something does stand in the way here.

That something is the phrase of art "at any time," and that makes all the difference ih the world. Here is what the Supreme Court had to say about a statute containing that phrase:

> The words which Congress has used are not ambiguous. Section 2255 provides that: "A prisoner in custody under sentence ... claiming the right to be re-

leased ... may move the court which imposed the sentence to vacate, set aside or correct the sentence." The statute further provides: "A motion for such relief may be made at any time." This latter provision simply means that, as in habeas corpus, there is no statute of limitations, no res judicata, and that the doctrine of laches is inapplicable.

*Heflin v. United States,* 358 U.S. 415, 420, 79 S.Ct. 451, 454, 3 L.Ed.2d 407 (1959) (Stewart, J., concurring [1]) (emphasis omitted). That seems plain enough. Of course, a habeas-corpus like statute (which § 2255 is) can be considered unique, and that is underscored by the absence of the possibility of res judicata effect. But that is not the only place where "at any time" has been given a rather restrictive interpretation. In the Lanham Act area it is also been declared that "at any time" excludes the use of the defense of laches. *See Marshak v. Treadwell,* 240 F.3d 184, 193 n. 4 (3d Cir.2001). And to get closer to the heart of the case at hand, the views of bankruptcy judges have, by and large, been the same.

In *In re Lyman,* 166 B.R. 333, 337 (Bankr.S.D.Ill.1994), for example, the court rejected the debtor's argument that a dischargeability complaint "should be dismissed pursuant to the equitable doctrines of laches or estoppel since plaintiffs did not file their complaint until one year after receiving notice of debtor's bankruptcy case." The court did so because Rule 4007(b) expressly states that the complaint can be filed at any time. *Id.* That is to say, where a debtor has not listed a creditor, he loses the " 'jurisdictional and time limit protections' " that he would otherwise have. *Glosser v. Parrish Real Estate (In re Grant),* 160 B.R. 839, 844 (Bankr. S.D.Cal.1993) (citation omitted). Other

---

**1.** Justice Stewart was joined by four other justices.

bankruptcy cases are to the same effect. *See Moberly v. Johnston (In re Moberly),* 266 B.R. 187, 190 (Bankr.N.D.Cal.2001) (Rule 4007(b) complaint can be filed at any time and is not barred by laches. "Equitable principles are not a basis for rulings contrary to the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure."); *see also Irons v. Santiago (In re Santiago),* 175 B.R. 48, 52 (B.A.P. 9th Cir.1994).

The good sense in this approach is underscored by the discussion in *Beezley v. California Land Title Co. (In re Beezley),* 994 F.2d 1433 (9th Cir.1993) (per curiam). There, after a brief meditation on a very closely related area of the law and on congressional purpose, the following appears:"What Congress deemed a proper balancing of the equities as between debtor and creditor with respect to unlisted debts it has enacted in section 523(a)(3) of the Bankruptcy Code. It is not for the courts to restrike that balance according to their own lights." *Id.* at 1440 (O'Scannlain, J., concurring). That is true here also. Had Congress desired to have the balance struck by § 523(a)(3)(B) and Rule 4007(b) to be affected by our notions of equity as manifested in the doctrine of laches, it could have insisted on language less immune to those notions than "at any time."

As many a keep defender discovered to his dismay, the strongest fortress can be weakened by those who tunnel under it. I decline Beaty's invitation to participate in weakening Rule 4007(b)'s donjon.

Thus, I respectfully concur in the result only.